TRI–STATE BROADCASTING CO., Inc., v. FEDERAL COMMUNICATIONS COMMISSION (RODERICK, Intervenor),

No. 6931.

United States Court of Appeals for the District of Columbia.

Decided March 16, 1938.

Arthur W. Scharfeld, Philip G. Loucks, and Joseph F. Zias, all of Washington, D. C., for appellant.

Hampson Gary, George B. Porter, and Fanney Neyman, all of Washington, D. C., for appellee.

James H. Hanley and Guy Mason, both of Washington, D. C., for intervenor.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal under Section 402(b) (2) of the Communications Act of 1934, 47 U.S.C.A. § 402(b) (2),[1] from an order of the Broadcast Division of the Communications Commission. Dorrance Roderick, the intervenor in this court, had made application before the Commission for a construction permit for the erection of a new broadcasting station at El Paso, Texas, with unlimited hours of operation on a frequency of 1500 kilocycles and a power of 100 watts. The appellant, Tri-State Broadcasting Company, was already operating stations KTSM and WDAH in El Paso. These stations share time on a frequency of 1310 kilocycles and for practical purposes may be treated as one station. The appellant was permitted to intervene in the proceedings before the Commission upon allegations that there were insufficient new sources of revenue to insure the financial stability of the proposed new station, that advertising revenues to be received by it would diminish those then being received by KTSM, that the consequent financial loss to KTSM would result in deterioration of its service and injury to the public, and that there was no need for the establishment of a new station in El Paso. After a hearing on the application the examiner submitted his report and recommended that the application of Roderick be granted. Exceptions to the examiner's report and request for oral argument before the Broadcast Division were filed by the appellant, and the applicant Roderick also requested oral argument. This was granted and had. Thereafter, the Commission granted the application and filed its statement of facts and grounds for decision. The appellant then petitioned the Commission *en banc* for a rehearing—asserting the discovery of new and material evidence bearing upon the question of available advertising for two stations in El Paso. This petition was denied, one Commissioner dissenting. This appeal was then taken. An order was issued by the Commission staying its order granting Roderick's application, pend-

[1] 48 Stat. 1064–1105, as amended by 50 Stat. 189–198, 47 U.S.C.A. §§ 151–609 (Supp.1937).

ing the determination of the cause on the merits by this court. Roderick thereafter filed a notice of intention to intervene in the appeal.

In the view we take of the case it is necessary to mention but three of the various points which the appellant seems to raise in the course of its statement of reasons for the appeal and in its brief.

1. On the controlling issue of public need of an additional station the Commission found "that there is a public need for said proposed station . . . that public interest, convenience, and necessity will be served through a grant of the application under consideration." This the appellant urges is insufficient as a finding of fact. In this the appellant is correct. In Saginaw Broadcasting Company v. Federal Communications Commission, 68 App. D.C. 282, 96 F.2d 554, decided this day, we have held that to be sufficient to support an order of the Communications Commission findings of fact must include the basic facts from which the ultimate facts, in the terms of the statutory criterion, are inferred by the Commission. The findings above quoted are but findings in the language of the statute. We are unable to determine upon what facts and for what reasons the Commission regarded an additional station as necessary. We cannot review the evidence to determine whether or not there is substantial support therein for findings not made.

2. The appellant urges that the Commission erred in failing to find on the question whether or not ownership of the proposed station by Roderick would result in unfair and destructive competition to the appellant's station because Roderick is the owner of a newspaper in El Paso, so that, as asserted, his joint control of newspaper and broadcasting facilities would give him an unduly advantageous competitive position. We know of no provision of statute or rule of law, and are cited to none, which forbids broadcasting by the owner of a newspaper. The absence of a finding upon the particular topic of Roderick's ownership of a newspaper is therefore not erroneous. On the subject of competition between the proposed station and existing stations the Commission did find as follows:

"While it is anticipated that the presence and operation of additional radio facilities in this city will result in the creation of a competitive situation between the appli-

cant and the licensees of the stations now operated in El Paso, nevertheless, it does not appear, from a review of the testimony and exhibits introduced in this connection, that the expected competition will immediately or ultimately produce adverse effects upon any of these parties or upon public interest generally. On the contrary, when the population figures of this city are analyzed, together with the prevailing business conditions and other related circumstances, we find that the competitive condition so anticipated is justified, and reasonably expected to insure an improved broadcasting service within the City of El Paso. . . . "

This, taken in connection with other findings in terms of the figures regarding population and available advertising, is sufficient on the subject of competition.

3. The appellant complains that certain testimony of Roderick, which was admitted by the Commission over objection, is incompetent. Roderick testified that he had talked to a large number of people, naming them—music teachers, directors of glee clubs and choirs, public officials, club officers, and business men. He was then asked, "What is the general impression you got from all of these people in reference to the necessity of establishing this station?" The examiner ruled that while the witness might not state the details of his conversations with the persons mentioned, he might state the results of his talks with them, and he was finally permitted to answer: "Those I talked to were unanimously of the opinion that another station would be very beneficial, and the majority of them promised financial support to it." And he was permitted to add that these persons made "definite commitments to support the station" and to cooperate with it financially.

This testimony was incompetent. While the Commission under familiar principles is not, as an administrative body, limited by the strict rules as to the admissibility of evidence which prevail in courts, nevertheless, ". . . the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. . . ." Interstate Commerce Commission v. Louisville & N. R. Co., 1913, 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431. The testimony admitted was clearly hearsay. It was a statement in effect of what others had told

Roderick. Its admission deprived the appellant of the right to cross-examine those a composite of whose views Roderick was reflecting into the record. It is urged in the brief for the Commission that the testimony was admissible as the opinion of an expert. But Roderick did not testify to any such study or experience in the field of radio broadcasting, community facilities, needs, and the like, as qualified him as an expert in the proper sense of that term. Whether, as contended by the Commission, there is in the record, exclusive of this incompetent testimony, competent evidence covering the same subject, we will not determine until the case is here upon proper findings.

Reversed and remanded.

### On Petition for Rehearing.

In topics 1, 2, and 3 of its petition for rehearing the Federal Communications Commission states that: the court ignored basic facts found by the Commission, upon which the Commission based its ultimate finding, in the language of the statute, that there is public need of another broadcasting station in El Paso; the court ignored its own rule laid down in Saginaw Broadcasting Company v. Federal Communications Commission, 68 App.D.C. 282, 96 F.2d 554, decided on March 16, 1938, simultaneously with the instant case; and the court ignored that portion of the Commission's Statement of Facts and Grounds for Decision from which it appeared that the Commission gave attentive consideration to the evidence and weighed the same in determining the facts of a basic nature, from which the ultimate facts in the language of the statute were inferred and from which followed the decision applying the statutory criterion. These statements are not correct. They apparently flow from the failure of the Commission to note that the court in the Saginaw Broadcasting Company Case pointed out not only that the basic facts to be found by the Commission must be reached from the evidence, but that "from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be. . . ." and that "from this finding the decision will follow by the application of the statutory criterion." By the word "inferred" is meant that there shall be some rational or coherent relationship between the basic facts and the ultimate facts, that the latter

shall flow logically from the former. It was not the will of Congress as expressed in the statute that orders should be based upon ultimate facts which bear no rational relationship to the basic facts shown by the evidence.

That portion of the Commission's Statement of Facts and Grounds for Decision which the court is said to have ignored is as follows:

"The population of the metropolitan area of El Paso, Texas, is 118,461 (1930 U.S. Census). Exclusive of the metropolitan area, it is 102,421. A showing was made that El Paso is a substantial trading center, the principal pursuits of the populace thereof being agriculture, stock raising, manufacturing, jobbing and mining. Included among its industries are several meat packing establishments of considerable size, a smelting plant, oil refineries, and distributing branches, several railroad lines and a number of jobbing houses, and mining, machinery and manufacturing companies. It appears that most of the agricultural products raised throughout a large area to the north and west of El Paso are marketed in this city." (R. 332)

\*　　　\*　　　\*

"\* \* \* At present, the city of El Paso receives primary service from Stations KTSM-WDAH which are there located, and share time on the frequency 1310 kc, with power of 100 watts. Additional primary service appears to be available from Stations XEJ, (1020 kc with 1 kw), XEFV (1210 kc, with 100 watts), XEF (980 kc, with 100 watts) and XEP (1160 kc, with 500 watts). Each of the stations involved in the latter group is located at Juarez, Mexico, which is directly across the border from El Paso. In addition secondary service is available during nighttime hours." (R. 333)

The court did not ignore that part of the Commission's statement; it considered it with care. If proper findings of basic fact logically related to the ultimate question of public need are finally made in the case, the quoted part may prove to have some background or foundational relationship thereto. But it appeared to the court when it considered this material, and it now appears, that it does not logically support the ultimate finding of the Commission, in the language of the statute, that there was public need of an additional station in El Paso. It does not follow

as a matter of inference from the fact that El Paso has in its metropolitan area 118,461 people and, exclusive of the metropolitan area 102,421 people, and that it is a substantial trading center with the various businesses described, and that it has primary radio service from stations KTSM and WDAH and additional primary service from the Mexican stations XEJ, XEFV, XEF, and XEP, and secondary service during nighttime hours, that an additional radio station is needed in El Paso. And we know of no rule of law and of no ruling by the Commission as an expert body that a community of the size and character and having the radio service above described is in need of additional radio service.

The findings of basic fact which would naturally be expected on the subject of need of an additional station where a community already has radio service would be those concerning the adequacy of the existing service, and in particular in this case concerning the adequacy of the service of the primary stations KTSM and WDAH. The existing radio service might be inadequate in financial stability, equipment, or management; or it might be adequate in such respects and still be inadequate in the sense that the stations, although operating at full capacity, are unable to supply the demands of advertisers and performers in the community. The Statement of Facts and Grounds for Decision on the part of the Commission contains no finding that the existing service is inadequate in any such particulars as are above mentioned. If there is evidence in the record warranting findings of inadequacy of the present service the Commission should make and state such findings. It was the intention of Congress in requiring findings of fact that the Commission should disclose the facts which cause it to reach its decision, and that it should not reach a decision without facts.

 In topic 4 of the petition for rehearing it is asserted that the court erroneously held incompetent the testimony of the intervenor concerning expected and probable commercial support for the proposed station—testimony said to have been admitted by the Commission as expert testimony. In support of this assertion reference is made to the rule that whether a witness is qualified to testify as an expert is a question for the judge presiding at the trial and his decision thereon is conclusive unless clearly erroneous. Cases are cited for this rule, and it is urged that it is applicable to the Commmission's proceedings. Granting the rule and its applicability to the Commission's proceedings generally, it is inapplicable in the instant case because it does not appear from the record that the intervenor was offered as an expert; and even if that did appear the Commission was, under the very rule on which it relies, clearly erroneous in treating intervenor as an expert. As stated in the opinion in the case, the intervenor "did not testify to any such study or experience in the field of radio broadcasting, community facilities, needs, and the like, as qualified him as an expert in the proper sense of that term." The intervenor's testimony showed merely that he had had a high school and college education, that he had been engaged in journalism first as a reporter, next in an advertising department of a newspaper, and thereafter as a publisher; that he had a net worth of something in excess of $200,000; that in radio he had "not had a great deal of experience except as a listener and occasionally as a performer"; that in respect of his interest in acquiring a radio station he had made several trips investigating properties in other localities, and had had access to information in Houston and Amarillo in particular in connection with the operation of broadcasting stations; that he was familiar with the broadcasts which had been going out over KTSM; that he had talked to a large number of people—music teachers, directors of glee clubs and choirs, public officials, club officers, and business men. The foregoing could not possibly justify a determination that the intervenor was an expert in the field of radio broadcasting economics. "An expert witness is one who is skilled in some art, science, trade, profession, or other human activity, and possesses peculiar knowledge concerning it." Hughes on Evidence (1907) c. XVIII, § 7. Still further, even if the intervenor had qualified properly as an expert, the testimony which was admitted over objection was not a statement of his opinion as an expert, but the statement of the opinions, promises, and commitments of others. Experts are called before courts and commissions in order that the tribunals may have the benefit of the expert's own opinions.

 In topic 5 of the petition for rehearing it is urged, finally, that the opin-

ion and decision of the court are erroneous in that the findings of the Commission as to expected commercial support, as shown by its Statement of Facts and Grounds for Decision, were not based entirely upon the testimony of the intervenor found to be incompetent, but were supported further by other proper and admissible evidence from which basic facts were found by the Commission. In respect of this the court said in its opinion: "Whether, as contended by the Commission, there is in the record, exclusive of this incompetent testimony, competent evidence covering the same subject, we will not determine until the case is here upon proper findings."

The petition for rehearing is denied.