**JOHNSTON BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (BEACH, Intervenor).**

**No. 9866.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 12, 1949.

Decided May 4, 1949.

---

[11] 12 Fed.Reg. 4036 (1947).

Mr. Franklin K. Lane, Washington, D. C., with whom Mr. Orville H. Walburn, Washington, D. C., was on the brief, for appellant.

Mr. Richard A. Solomon, Washington, D. C., Counsel, Federal Communications Commission, with whom Mr. Benedict P. Cottone, General Counsel, Mr. Max Goldman, Acting Assistant General Counsel, and Mr. Dee W. Pincock, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. John P. Southmayd, Washington, D. C., with whom Messrs. Ben S. Fisher and Charles V. Wayland, Washington, D. C., were on the brief, for intervenor.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Two applications, one for a permit to construct a new radio broadcasting station and the other for changes in the frequency and power of an existing station, were presented to the Commission, one by Johnston Broadcasting Company and the other by Thomas N. Beach.[1] The applications were mutually exclusive, both being for operation on the same frequency. The Com-

[1] For simplicity's sake, we shall refer to these parties as Johnston and Beach, respectively.

mission set them for a comparative hearing.

Johnston moved that the Beach application be rejected, on the ground that it failed to meet the statutory requirements for consideration. That is its first point upon this appeal. The Commission made findings of fact, conclusions of law, and a decision, which was to award a permit to Beach. Johnston assails the findings, conclusion and decision.

The form of application promulgated by the Commission requires certain engineering information. This form is supported by requirements in regulations adopted by the Commission. Beach executed the affidavit on his application on August 24, 1946. Where the prescribed form called for engineering data, the requirement was met with the notation "See Engineering Report attached hereto." As a matter of fact, the engineering material had not then been prepared and thus was not then attached. This material was completed about September 30, 1946. It was sworn to by the engineer who prepared it. The application, with the engineering data attached, was filed on October 2, 1946.

The statute provides that the Commission may grant a license only upon an application made in writing,[2] and that an application must be sworn to by the applicant.[3] These statutory provisions are peremptory—"The Commission may grant licenses, renewal of licenses, and modification of licenses only upon written application therefor received by it: * * * Such application and/or such statement of fact shall be signed by the applicant and/or licensee under oath or affirmation. * * No license shall be issued * * * for the operation of any station * * * unless a permit for its construction has been granted by the Commission upon written application therefor. * * * Such application shall be signed by the applicant under oath or affirmation."

Two propositions, which are the premises from which the conclusion to this point in the controversy must be drawn, are per-

fectly clear. (1) The engineering data was not sworn to by the applicant. No one can swear to an event which has not yet transpired, or to material which is not yet in existence. (2) By statutory requirement, an affidavit by the applicant is a requisite to a valid application.

So much being clear, the next inquiries are as to the meaning of the statutory requirement for an affidavit, and as to the result of a failure to meet that requirement.

 When the statute says that there must be an affidavit to an application, it must mean that the contents of the application must be sworn to. It certainly does not mean that there could be merely an affidavit on a blank form. The statute says that the contents of the application shall be those prescribed by Commission regulations.[4] Thus, it requires that the contents of the application, as prescribed by the Commission by regulation, must be supported by an affidavit of the applicant. Engineering material was part of the prescribed contents.

 Consideration of the purpose of the affidavit sheds light upon the meaning of the requirement. Congress evidently meant that an applicant must assume responsibility for the accuracy of the information given on his application. It is said that an ordinary applicant may not be able to swear to the accuracy of engineering or accounting or legal data. But an affidavit, in its ordinary sense and usage, may be upon information and belief. In such case, the affiant does not guarantee the accuracy of the data, but he does assume the responsibility of being satisfied upon the best of his information and belief that the data is accurate. Even this sort of affidavit is a serious responsibility and requires that the applicant act in good faith, upon his best information and his bona fide belief.

 It is suggested that the statutory requirement for an affidavit is for the convenience of the Commission and that the

2 Secs. 308(a) and 319(a) of the Communications Act of 1934, 48 Stat. 1084, 1089, 47 U.S.C.A. §§ 308(a), 319(a).
3 Secs. 308(b) and 319(a) of the Act, 48 Stat. 1084, 1089, 47 U.S.C.A. §§ 308(b), 319(a).
4 Sec. 308(b) of the Act, 48 Stat. 1084, 47 U.S.C.A. § 308(b).

Commission, in the exercise of its broad administrative discretion, may waive the requirement. But Congress imposed that requirement and put no qualification in it. There may be a question as to what the requirement means, but once that meaning is ascertained, it must be met. The Commission has no authority to waive it. Congress did not leave it to administrative discretion.

We think, therefore, that it is clear that the statutory requirement means that the contents of the application must be supported by the affidavit of the applicant; that the engineering data was required as part of the contents of the application; that the Commission had no authority to waive the requirement; and that this application did not meet the requirement. This brings us to consideration of the necessary effect of a failure to comply with this statutory provision. Must the Commission reject such an application? Or may it permit the application to be amended? Or may it consider the affidavit of the engineers a sufficient substitute for the affidavit of the applicant?

The answer is indicated by the rules of law which have been established in respect to other statutes which have required verification of pleadings or other papers as a requisite to their consideration. The statute which created the Court of Claims and fixed its jurisdiction provided: "The said petition shall be verified by the affidavit of the claimant, his agent or attorney."[5] Soon after its creation, the court had to decide whether verification was jurisdictional.[6] An unverified petition was filed, the United States answered, and the time for filing a new complaint expired. Petitioner then sought to supply the verification. The United States moved to dismiss the complaint, upon the ground that the court had no jurisdiction upon an unverified petition. The court held that the answer waived verification, so far as it could be waived, and further that the lack of verification could be supplied; it granted petitioner's motion to amend.[7] The Tucker Act, as it was before September 1, 1948,[8] provided for the filing of "a petition, duly verified". The District Court for the Eastern District of New York, in the only case which we have found upon the point under that Act,[9] held that the court could not proceed upon an unverified complaint but that an amendment, after the statute of limitations upon new complaints had expired, cured the defect. The Judicial Code, as it was before September 1, 1948, in providing for the issuance of temporary restraining orders,[10] required an affidavit or a "verified bill". It was held under Equity Rule 73, which embodied the same requirement, that "a court of equity is without power to issue an injunction unless there is a properly verified bill upon which to base the same."[11]

Generally speaking, it seems to be held in the state courts that a statutory requirement for a verified pleading is not jurisdictional but can be waived by the opposing party or cured by amendment.[12]

---

[5] Rev.Stat. § 1072, incorporated in Judicial Code, 36 Stat. 1139 (1911), 28 U.S.C.A. § 265 (1928). This section of the statute was repealed by the Act of June 25, 1948, 62 Stat. 992, effective September 1, 1948, which reenacted, revised and recodified the Judicial Code. The requirement that a petition be verified by an affidavit of the claimant continued as a part of Rule 1 of the Rules of the Court of Claims, 28 U.S.C.A., until December 10, 1948, when the rule was amended so as to eliminate that provision.

[6] Griffin v. United States, 1877, 13 Ct. Cl. 257.

[7] See also Eastern Band of Cherokee Indians v. Cherokee Nation West and United States, 1883, 19 Ct.Cl. 35; Duran v. United States, 1896, 31 Ct.Cl. 353.

[8] 24 Stat. 506 (1887), 28 U.S.C.A. § 762 (1928).

[9] Yuri Yajima v. United States, D.C. 1946, 6 F.R.D. 260.

[10] 36 Stat. 1162 (1911), 38 Stat. 737 (1914), 28 U.S.C.A. § 381 (1928).

[11] Cathey v. Norfolk & W. R. Co., 4 Cir., 1915, 228 F. 26, 29.

[12] Cook v. Donner, 1937, 145 Kan. 674, 66 P.2d 587, 110 A.L.R. 244; Commercial Bank & Trust Co. v. Jordan, 1929, 85 Mont. 375, 278 P. 832, 65 A.L.R. 968; Emery v. Bennett, 1916, 97 Kan. 490, 155 P. 1075, Ann.Cas.1918D, 437, and cases collected in annotation thereto in Ann. Cas.1918D, 440; Equitable Accident Ins. Co. v. Osborn, 1890, 90 Ala. 201, 9 So. 869, and annotation thereto in 13 L.R.A. 267.

In divorce cases, it seems to be held generally that a statutory requirement of verification is jurisdictional,[13] but, even so, failure to verify can be cured by amendment prior to trial.[14]

■ Upon the foregoing authorities, the rule appears to be that when a statute requires verification of a pleading, a court cannot act upon the pleading unverified, but that an initial failure to verify can be cured by later verification. This supplies the answer to the problem at bar. The Commission had no power to act upon the unverified application. It could not waive the requirement, and we do not think that the nature of these proceedings is such that the other applicant, although adversary in the fullest sense, could have waived it. In any event, the opposing applicant did not waive, and the lack of verification was not cured. The Commission's award to Beach upon the application before it was, therefore, without its statutory power. This conclusion leaves the proceedings on the several applications without a final disposition. We will not undertake to direct the issuance of a permit to Johnston. The better procedure is to let the Commission complete its administrative determinations. The order of the Commission will be set aside, and the case remanded for further proceedings in the light of this opinion.

This brings us to appellant's second main contention, which is that the Commission acted arbitrarily, capriciously and in violation of due process of law, in that its conclusions were not supported by substantial evidence and one of them constituted a form of censorship forbidden by the statute. Because these phases of the case will be material in further proceedings before the Commission, we will consider them. Moreover, the contention of appellant in these respects raises basic questions as to findings and conclusions in comparative hearings in which the Commission must choose between mutually exclusive applications. Because these basic questions recur in many cases, we shall consider them somewhat in detail.

■■ A choice between two applicants involves more than the bare qualifications of each applicant. It involves a comparison of characteristics. Both A and B may be qualified, but if a choice must be made, the question is which is the better qualified. Both might be ready, able and willing to serve the public interest. But in choosing between them, the inquiry must reveal which would better serve that interest. So the nature of the material, the findings and the bases for conclusion differ when (1) the inquiry is merely whether an applicant is qualified and (2) when the purpose is to make a proper choice between two qualified applicants. To illustrate, local residence may not be an essential to qualification. But as between two applicants otherwise equally able, local residence might be a decisive factor.

In the present case, the Commission easily found both applicants to be qualified for a permit. The question then was which should receive it. Comparative qualities and not mere positive characteristics must then be considered.

■ The principles which govern the interplay of administrative and judicial functions in a comparative consideration are basically the same as those which govern in the determination of the qualification of a single applicant.[15] The Commission has wide powers and discretion, but upon appeal ·the courts must determine whether its action was within its statutory authority and applicable constitutional limitations, and the findings, conclusions and

---

13 Hinkle v. Lovelace, 1907, 204 Mo. 208, 102 S.W. 1015, 11 L.R.A.,N.S., 730, 120 Am.St.Rep. 698, 11 Ann.Cas. 794; Ayres v. Gartner, 1892, 90 Mich. 380, 51 N.W. 461; Nichols v. Nichols, 1901, 128 N.C. 108, 38 S.E. 296; De Armond v. De Armond, 1892, 92 Tenn. 40, 20 S.W. 422.

14 See annotation to Hinkle v. Lovelace, as reported at 11 Ann.Cas. 799; and 17 Am.Jur. pp. 308, 310, Divorce and Separation §§ 311, 316

15 Saginaw Broadcasting Co. v. Federal Communications Comm., 1938, 68 App. D.C. 282, 96 F.2d 554, certiorari denied Gross v. Saginaw Broadcasting Co., 1938, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Tri-State Broadcasting Co. v. Federal Communications Comm., 1938, 68 App. D.C. 292, 96 F.2d 564; Mississippi River Fuel Corp. v. Federal Power Comm., 1947, 82 U.S.App.D.C. 208, 163 F.2d 433.

decision must be such that the courts can exercise that jurisdiction.[16] But the essentials to legally valid conclusions differ, as the two problems, one of bare qualification and the other of comparative qualifications, differ. In respect to comparative decisions, these are the essentials: (1) The bases or reasons for the final conclusion must be clearly stated. (2) That conclusion must be a rational result from the findings of ultimate facts, and those findings must be sufficient in number and substance to support the conclusion. (3) The ultimate facts as found must appear as rational inferences from the findings of basic facts. (4) The findings of the basic facts must be supported by substantial evidence. (5) Findings must be made in respect to every difference, except those which are frivolous or wholly unsubstantial, between the applicants indicated by the evidence and advanced by one of the parties as effective. (6) The final conclusion must be upon a composite consideration of the findings as to the several differences, pro and con each applicant.

The first four of these essentials are established requisites of Commission decisions.[17] The progress to a valid conclusion, as long-since established by the cases, is: to receive the evidence; then to make from the evidence findings of basic facts; then to make, by inference from the basic facts, findings of the ultimate facts which are requisite to decision; then to draw a final conclusion by the application of the statutory criterion to the ultimate facts. The last two essentials above stated—(5) and (6)—are made necessary by the peculiar characteristics of a comparative determination. The Commission cannot ignore a material difference between two applicants and make findings in respect to selected characteristics only. Neither can it base its conclusion upon a selection from among its findings of differences and ignore all other findings. It must take into account all the characteristics which indicate differences, and reach an over-all relative determination upon an evaluation of all factors, conflicting in many cases. In its judgment upon this evaluation, the Commission has wide discretion. The Supreme Court has said that the administrative tribunal under statutes such as this, is the final arbiter of the public interest.[18] The requirement is that the judgment be within the bounds of rational derivation from the findings.

We say that the required findings need go no further than the evidence and the proposals of the parties. In essence, that is to say that there is no essential absolute in making a comparison. There are such essentials in determining whether each applicant is qualified to receive a permit. But when those individual qualifications have been established, we think that the Commission may rely upon the parties to present whatever factual matter bears upon a choice between them. When the minimum qualifications of both applicants have been established, the public interest will be protected no matter which applicant is chosen. From there on the public interest is served by the selection of the better qualified applicant, and the private interest of each applicant comes into play upon that question. Thus, the comparative hearing is an adversary proceeding. The applicants are hostile, and their respective interests depend not only upon their own virtues but upon the relative shortcomings of their adversaries. We think, therefore, that the Commission is entitled to assume that in such a proceeding the record of the testimony will contain reference to all the facts in respect to which a difference between the parties exists, and that the parties will urge, each in his own behalf, the substantial points of preference. The Commission need not inquire, on its own behalf, into possible differences between the applicants which are not suggested by any party, although in its discretion it may do so.

In sum, we think that there are no established criteria by which a choice between the applicants must be made. In this respect, a comparative determination differs

[16] Colorado-Wyoming Gas Co. v. Federal Power Comm., 1945, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235.

[17] See note 15 supra.

[18] United States v. Pierce Auto Freight Lines, 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821.

from the determination of each applicant's qualifications for a permit. A choice can properly be made upon those differences advanced by the parties as reasons for the choice. To illustrate, if neither applicant presents as a material factor the relative financial resources of himself and his adversary, the Commission need not require testimony upon the point or make a finding in respect to it, beyond the requisite ability for bare qualification. It may assume that there is no material difference between the applicants upon that point.

Our view upon the foregoing matter rests upon the actualities of a truly adversary proceeding, upon the difficulty, if not the impossibility, of defining a list of things in respect to which applicants may differ, and upon the practicalities of the Commission's task. It is only common sense to assume that adversaries with substantial interests at stake will overlook no advantage to be found in an opponent's weaknesses. It is true that a few items upon which comparisons could be made might be prescribed, but such a list could not encompass every factual possibility. If a list were made and adopted, some, indeed many, cases might well fall outside it, and in very many cases the listed standards would be immaterial because of no difference between the parties in those particular respects. And, lastly, if evidence were required on a list of subjects, immaterial as well as material, to be presented by the Commission staff if not offered by any party, or to be required without exception from the parties, the complexity, length and expense of proceedings would be vastly increased wholly unnecessarily.

In the case at bar, there were five points of difference urged by the contesting applicants as pertinent to a choice between them, (1) residence, (2) broadcasting experience, (3) proposed participation in the operation of the station, (4) program proposals, and (5) quality of staff.

The basis for the conclusion of the Commission is clearly stated. In its Memorandum Opinion and Order, it said succinctly:

"Our opinion to favor the Beach application on its merits over that of the Johnston application was based on our finding that while there were no sharp distinctions between the applicants in terms of residence, broadcasting experience, or proposed participation in the operation of the facilities applied for, there was a sharp distinction in favor of the applicant Beach in matters of program proposals and planned staff operations."

 Appellant says that the finding that there was no difference between the applicants in respect to residence, broadcasting experience, and proposed participation in the operation is arbitrary and capricious. We have examined the findings in those respects. They are full and clearly stated. We have also examined the evidence to which both parties have referred us as bearing upon the facts. We think it definitely substantial. We find no error in the Commission's failure to find a distinctive difference the applicants in these respects. One has been a resident of Birmingham since 1911; the other since 1920. One has owned and operated a station since 1945, and the other since 1946. Both have participated in the operation of their stations and planned to participate in the new, but both have fulltime experienced general managers to carry on the work.

As to the program proposals, the difference which the Commission found is spelled out in detail in its findings. It found nothing in the record to indicate that Johnston had made or would make an affirmative effort to encourage broadcasts on controversial issues or topics of current interest to the community, such as education, labor, and civic enterprises. On the other hand, it found that Beach has had and proposes to have a program of positive action to encourage such broadcasts, and of complete cooperation with civic interests. The Commission concluded that Beach would provide greater opportunity for local expression than would Johnston. The findings are based upon evidence in the record, and the conclusion seems to us to be within the permissible bounds of the Commission's discretion.

The difference between the staffs of the applicants is succinctly stated. The Commission found, as the evidence indicated, that the proposed positions and duties of the Beach staff promise a much more effective provision for program preparation

and presentation than do those of the Johnston staff.

As to appellant's contention that the Commission's consideration of the proposed programs was a form of censorship, it is true that the Commission cannot choose on the basis of political, economic or social views of an applicant. But in a comparative consideration, it. is well recognized that comparative service to the listening public is the vital element,[19] and programs are the essence of that service. So, while the Commission cannot prescribe any type of program (except for prohibitions against obscenity, profanity, etc.), it can make a comparison on the basis of public interest and, therefore, of public service. Such a comparison of proposals is not a form of censorship within the meaning of the statute. As we read the Commission's findings, the nature of the views of the applicants was no part of the consideration. The nature of the programs was.

We cannot say that the Commission acted arbitrarily or capriciously in making its conclusive choice between these two applicants.

However, pursuant to the conclusion stated in the first half of this opinion, the case must be and is

Reversed and remanded.

---

[19] National Broadcasting Co. v. United States, 1943, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 138 n. 2, 60 S.Ct. 437, 84 L.Ed. 656.