267 F.2d 629
 105 U.S.App.D.C. 352
 Troyce H. HARRELL and Kermit S. Ashby d/b/a Star of The
Plains Broadcasting Company, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Earl S. Walden,
et al., d/b/a Plainview Radio, Intervenor.
 No. 14516.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 5, 1958.
Decided March 9, 1959.
 
 Mr. Norman E. Jorgensen, Washington, D.C., with whom Mr. Seymour Krieger, Washington, D.C., was on the brief, for appellant.
 Mr. John H. Conlin, Counsel, Federal Communications Commission, for appellee. Messrs. John L. Fitzgerald, Gen. Counsel, Federal Communications Commission, Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, at the time brief was filed, and Mark E. Fields, Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission at the time record was filed, also entered an appearance for appellee.
 Mr. Michael H. Bader, Washington, D.C., with whom Mr. Andrew G. Haley, Washington, D.C., was on the brief, for intervenor. Mr. J. Roger Wollenberg, Washington, D.C., also entered an appearance for intervenor.
 Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 This is an appeal from a Federal Communications Commission grant to Plainview Radio (intervenor) of a construction permit to operate a standard broadcasting station at Plainview, Texas, and the Commission's denial of the mutually exclusive application of Star of the Plains Broadcasting Company, for a station in Slaton, Texas, 55 miles away. The trial examiner had preferred the Slaton applicant.
 
 
 2
 In brief, the trial examiner found that in 1950 Plainview had a population of 14,044. It now receives primary radio service from six broadcasting stations, one of which is located in Plainview. The proposed station would render service to a population of 144,616 and it would not interfere with any existing broadcast service.
 
 
 3
 Slaton, in 1950, had a population of 5,036. It is located 16 miles from Lubbock, Texas, with a population of 71,747, and is within the Lubbock metropolitan area. It receives primary broadcast service from seven stations, six of which are located in Lubbock. It has no transmission station of its own. The proposed station would render service to 145,140, but would cause destructive interference involving 5.97% of the population within the normally protected contour of KCCO, Lawton, Oklahoma.[1] The area of such destructive interference is, however, served by at least ten other standard broadcast facilities at the present time.
 
 
 4
 On these findings, the trial examiner awarded the station to appellant, the Slaton applicant, in conformity with the 'Commission's longstanding policy 'to afford every community of substantial size, where possible, with an outlet for local self-expression. * * *" Despite the objectionable interference which such a grant would cause to KCCO, the examiner found that a grant to Slaton 'would better provide a fair, efficient, and equitable distribution of radio service * * *' in conformity with the mandate of 307(b).[2]
 
 
 5
 The Commission reversed the trial examiner, and awarded the permit to Plainview Radio. The Commission recognized that the interference which KCCO would suffer from a grant to Slaton was well within the standards of permissive interference established as a guide by the Commission.[3] And it acknowledged that, under its own policy with respect to $307(b), Slaton's need for a local broadcast outlet must be regarded as outweighing the needs of the population losing the KCCO service, and that Slaton must be considered a separate community despite its location within the Lubbock metropolitan area.[4] But the Commission made clear that Slaton's location, and the interference with KCCO, were factors available for comparative consideration. It relied on Slaton's proximity to Lubbock's six stations to find a diminished need for a first local outlet of its own. Then it weighed this diminished need, Slaton's small size, and the interference with KCCO against the presumption of need that a 'population center of substantial size (like Plainview) has for a second medium of local expression * * *.' On this balancing of factors the Commission concluded that an award to Plainview would result in a more equitable distribution of radio facilities under 307(b).
 
 
 6
 We think the record is inadequate to support this conclusion. It is elementary that findings of basic facts must be supported by substantial evidence on the record as a whole. In the present case, the key issue for purposes of the 307(b) proceeding was the comparative needs of the two communities. Under such circumstances, the Commission could hardly find that one community's need was greater or less than the other's without substantial evidence as to those needs. This was established ten years ago in Easton Pub. Co. v. Federal Communications Comm'n, 1949, 85 U.S.App.D.C. 33, 175 F.2d 344, a 307(b) proceeding. The Court was explicit in requiring that the Commission make a determination of the relative needs of the communities, and the relative abilities of the applicants to meet the needs. The Court was equally explicit in pointing to the type of evidence essential for such a determination. It stated:
 
 
 7
 '* * * we cannot tell from the findings what caused the Commission to say that Allentown's need was greater. Present and proposed programs would seem to be an essential element in testing comparative community needs * * *.' Id., 85 U.S.App.D.C. at pages 37-38, 175 F.2d at pages 348-349.
 
 
 8
 On the present record, however, no such evidence of programming appears.
 
 
 9
 Similarly, with respect to the interference a station at Slaton would cause KCCO, there is no evidence of the need for the KCCO service lost by interference, on the one hand, as against the need for the service proposed by the new facility, on the other. The necessity for such evidence, in determining the weight to be given interference resulting from a proposed station, was made evident by our decision in Democrat Printing Co. v. Federal Communications Comm'n, 1952, 91 U.S.App.D.C. 72, 202 F.2d 298.
 
 
 10
 Apparently, the Commission relied upon its expertise in assaying the factor of interference with KCCO, and in assuming that whatever Slaton's local needs might be, they would be sufficiently filled by Lubbock's six stations. However, as we said in another context: 'Commission expertise alone cannot support (such) pivotal assumption(s).'[5]
 
 
 11
 In oral argument in this Court, intervenor urged that the absence of programming evidence was not available to attack the Commission's determination since the parties had agreed at the hearing before the examiner to limit comparative consideration to engineering statistics. Assuming arguendo that such an agreement was made,[6] it cannot serve to excuse the absence of the evidence which we have held essential to sustain the Commission's findings. True it is that the parties need not adduce any evidence they do not wish to. But then, the Commission cannot make any findings which differentiate between the two parties on those issues upon which there is no supporting evidence. Johnston Broadcasting Co. v. Federal Communications Comm'n, 1949, 85 U.S.App.D.C. 40, 46, 175 F.2d 351, 357. Quite the contrary-- in the present case, without any more evidence, the Commission would have had to assume that there was 'no material difference between the applicants' as to community need, Johnston Broadcasting Co. v. Federal Communications Comm'n, supra, 85 U.S.App.D.C. at page 47, 175 F.2d at page 358, and would therefore have had to award the station to the petitioner on the basis of the 307(b) presumption. If it purported to differentiate between the two stations on the basis of the respective needs of the two communities, then it should have required more evidence regardless of any stipulations in the case. Under the circumstances, the case must be
 
 
 12
 Remanded for further proceedings upon a re-opened record in accordance with this opinion.
 
 
 
 [1]
 In addition, KCCO receives co-channel interference involving .93% of the population within its normally protected contour, from Station KFMJ, Tulsa, Oklahoma
 The proposed station in Slaton would receive destructive interference from Station KCCO involving 5.4% of the population located within its normally protected contour.
 The proposed station in Plainview would receive interference from Station KCCO and Station KMCC, Garden City, Kansas, involving 4.9% of the population located within its normally protected contour.
 
 
 [2]
 48 Stat. 1083 (1934), as amended, 47 U.S.C.A. 307(b)
 'In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.'
 
 
 [3]
 See Beaumont Broadcasting Corp. v. Federal Communications Comm'n, 1952, 91 U.S.App.D.C. 111, 115, 202 F.2d 306, 309; Democrat Printing Co. v. Federal Communications Comm'n, 1952, 91 U.S.App.D.C. 72, 75, 202 F.2d 298, 300-301
 
 
 [4]
 The Commission has considered the grant of a first local outlet to a community of great importance in allocating broadcast facilities. Southern Media Corp., 11 F.C.C. 688 (1946); Utica Observer-Dispatch, Inc., 11 F.C.C. 383 (1946). This has been true even when the community receiving the award was within the metropolitan area of a community then served by a transmission system or systems. WMAK, Inc., 11 F.C.C. 850 (1947). This has also been true when a grant of a first local outlet would cause considerable destructive interference to an existing service. And see Greater New Castle Broadcasting Corp., 8 Pike & Fischer Radio Reg. 291 (1952); Lawton-Ft. Sill Broadcasting Co., 7 Pike & Fischer Radio Reg. 1216 (1952)
 Of course, the fact that a grant to a community would bring, to that community its first local broadcasting facility does not per se mean that such a grant is in the public interest. North Plains Broadcasting Corp., 7 Pike & Fischer Radio Reg. 93, 106a (1951); City Broadcasting Corp., 7 Pike & Fischer Radio Reg. 1055 (1953).
 
 
 [5]
 Washington Gas Light Co. v. Baker, 1950, 88 U.S.App.D.C. 115, 120-121, 188 F.2d 11, 16-17, certiorari denied 1951, 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686. See Easton Pub. Co. v. Federal Communications Comm'n, supra; Democrat Printing Co. v. Federal Communications Comm'n, supra; Plains Radio Broadcasting Co. v. Federal Communications Comm'n, 1948, 85 U.S.App.D.C. 48, 51-52, 175 F.2d 359, 362-363. And see Saginaw Broadcasting Co. v. Federal Communications Comm'n, 1938, 68 App.D.C. 282, 290, 96 F.2d 554, 561-562, certiorari denied Gross v. Saginaw Broadcasting Co., 1938, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Tri-State Broadcasting Co. v. Federal Communications Comm'n, 1938, 68 App.D.C. 292, 295-296, 96 F.2d 564, 567-568; Courier Post Pub. Co. v. Federal Communications Comm'n, 1939, 70 App.D.C. 80, 81-84, 104 F.2d 213, 214-216; American Broadcasting Co. v. Federal Communications Comm'n, 1949, 85 U.S.App.D.C. 343, 348-351, 179 F.2d 437, 443-445
 
 
 [6]
 The record is not entirely clear on the point