CAMDEN RADIO, Inc.
v.
FEDERAL COMMUNICATIONS
COMMISSION et al.

CAMDEN RADIO, Inc.
v.
UNITED STATES et al.
Nos. 11833, 11871.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 12, 1954.

Decided July 15, 1954.
Petition for Rehearing Denied
March 17, 1955.

Mr. Eugene L. Burke, Washington, D. C., with whom Mr. Charles A. Haile, Washington, D. C., was on the brief, for appellant in No. 11833 and petitioner in No. 11871.

Mr. Daniel R. Ohlbaum, Counsel, Federal Communications Commission, of the bar of the Court of Appeals of New York, *pro hac vice* by special leave of Court, with whom Messrs. Charles H. Weston, Special Asst. to the Atty. Gen., Department of Justice, and J. Roger Wollenberg, Asst. Gen. Counsel, Federal Communications Commission, at time of argument, were on the brief, for appel-

lee in No. 11833 and respondents in No. 11871. Mr. Richard A. Solomon, Counsel, Federal Communications Commission, entered an appearance for appellee in No. 11833 and respondents in No. 11871.

Mr. Russell Rowell, Washington, D. C., for intervenor in No. 11833 and No. 11871.

Before WILBUR K. MILLER, PRETTYMAN and DANAHER, Circuit Judges.

WILBUR K. MILLER, *Circuit Judge.*

In these cases we are asked by Camden Radio, Inc., the licensee of a radio station at Camden, Arkansas, to set aside two orders of the Federal Communications Commission by which it considers itself aggrieved. One of these, which was entered under the authority of § 310(b) of the Communications Act[1] without a hearing, authorized Leo Howard to assign to D. R. James, Jr., the construction permit for a second station at Camden which had been issued to him July 1, 1951. The other order complained of, published May 11, 1953, denied Camden Radio's protest, filed April 24 under § 309(c) of the Act,[2]

---

1. Communications Act of 1934, as amended, 48 Stat. 1064 (1934), 50 Stat. 189 (1937), 47 U.S.C.A. § 151. Section 310 (b) is as follows:

    "(b) No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby. Any such application shall be disposed of as if the proposed transferee or assignee were making application under section 308 of this title for the permit or license in question; but in acting thereon the Commission may not consider whether the public interest, convenience, and necessity might be served by the transfer, assignment, or disposal of the permit or license to a person other than the proposed transferee or assignee. June 19, 1934, c. 652, § 310, 48

Stat. 1086, amended July 16, 1952, c. 879, § 8, 66 Stat. 716."

2. Section 309(c) is as follows:

    "When any instrument of authorization is granted by the Commission without a hearing as provided in subsection (a) of this section, such grant shall remain subject to protest as hereinafter provided for a period of thirty days. During such thirty-day period any party in interest may file a protest under oath directed to such grant and request a hearing on said application so granted. Any protest so filed shall contain such allegations of fact as will show the protestant to be a party in interest and shall specify with particularity the facts, matters, and things relied upon, but shall not include issues or allegations phrased generally. The Commission shall, within fifteen days from the date of the filing of such protest, enter findings as to whether such protest meets the foregoing requirements and if it so finds the application involved shall be set for hearing upon the issues set forth in said protest, together with

against the order of April 1st on the ground that Camden Radio had not shown itself to be a "party in interest" entitled to protest that order.

The events which preceded and gave rise to the two orders in question will be briefly noted. Howard had applied August 11, 1952, for a station license covering his construction permit, but the Commission had withheld action on the application because it had information tending to show he had misrepresented and concealed facts in obtaining the permit. In those circumstances, Howard applied October 13, 1952, for permission to assign the construction permit to James. With that application pending, the Commission notified Howard November 5, 1952, of his alleged wrongdoing, said it could not at that time find the grant of a station license to be in the public interest, and informed him that, as provided in § 309(b) of the Communications Act, he might reply to the charges within thirty days.

Howard responded November 19, 1952, but did not seriously controvert the charges of concealment and misrepresentation. We quote from his letter:

"* * * I do assume full responsibility of the entire matter and consequently want to get out of the matter altogether. * * * In order that I can get relieved of it altogether, have nothing more to do with it, I was willing to assign, and have so advised the Commission, any and all interest."

Considering the reply unsatisfactory, the Commission on December 31, 1952, designated the license application for hearing, pursuant to § 309(b), upon the issues of concealment and misrepresentation, and generally to obtain full information concerning the situation.

On January 28, 1953, Howard again wrote the Commission, saying *inter alia:*

"* * * I do not believe a hearing could produce any additional information from what you already have. From the application to transfer this license [*sic*] permit to D. R. James, Jr., the exhibits and supplementing information attached thereto and my letter to you of November 19, 1952, the Commission has a record of all the facts in connection with this application. * * * *"

He added, "I realize my mistakes * * * *" and said he wished "to be relieved of all interest, connection and association or responsibility." Accordingly he requested reconsideration of the order designating his license application for hearing, and asked approval of his pending application for assignment of the construction permit to James.

Over the vigorous protest of the Chief of its Broadcast Bureau,[3] the Commission on March 11, 1953, cancelled the hearing theretofore designated with respect to Howard's application for a station license, and removed it from the hearing docket "to be further considered in connection with our examination of

such further specific issues, if any, as may be prescribed by the Commission. In any hearing subsequently held upon such application all issues specified by the Commission shall be tried in the same manner provided in subsection (b) of this section, but with respect to all issues set forth in the protest and not specifically adopted by the Commission, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the protestant. The hearing and determination of cases arising under this subsection shall be expedited by the Commission and pending hearing and decision the effective date of the Commission's action to which protest is made

shall be postponed to the effective date of the Commission's decision after hearing, unless the authorization involved is necessary to the maintenance or conduct of an existing service, in which event the Commission shall authorize the applicant to utilize the facilities or authorization in question pending the Commission's decision after hearing."

3. He said:
"* * * [I]t is apparent that Howard admits he has been guilty of failing to disclose material facts concerning the ownership and control of KPLN and that he has, at times, misrepresented facts to the Commission. * * * *"

**194**

the pending application for assignment of construction permit." Then, without a hearing, the Commission consented to the assignment of the construction permit by an order published April 1, 1953.

To this order Camden Radio filed a protest on April 24 purportedly under § 309(c) of the Act, describing itself as a party in interest because it would suffer economic injury through competition from the new station. The protest alleged that Howard's deception of the Commission constituted grounds for revoking his construction permit; and that operating control of the new station would remain in 'the hands of parties who had participated in the unauthorized construction of the new station, including the assignee's father who had been an undisclosed participant in Howard's venture. The protestant asked for a Commission order that Howard show cause why his construction permit should not be revoked.

As we have said, the Commission denied the protest May 11, 1953, holding that Camden Radio had not shown itself to be a party in interest within the meaning of § 309(c). It also expressed the view that Camden Radio's request for the issuance against Howard of an order to show cause why the construction permit should not be revoked was not properly included in a protest filed under § 309(c).

June 8, 1953, Camden Radio filed in this court, purportedly pursuant to § 402(b)(6), a notice of appeal in which it charged that, in view of all the circumstances, the Commission erred in authorizing the assignment to James; that it erred further in finding the protestant was not a "party in interest," and in not hearing and sustaining the protest. While the orders of April 1st and May 11 were both attacked, the prayer for relief was that we set aside the order of April 1st. This appeal is No. 11,833.

Apparently fearful that the notice of appeal just mentioned did not bring before us the denial order of May 11, Camden Radio filed July 7, 1953, a petition which expressly sought review of both orders. This case is No. 11,871. As Camden Radio in the two proceedings attacks the same orders and asks the same relief with respect to them, the cases have been consolidated.

■ We clearly have jurisdiction to review the order of May 11 since, regardless of whether it was appealed under § 402(a) or § 402(b), review was sought in ample time. We need not decide whether we have jurisdiction to review the order of April 1 also, in view of the disposition of the case made hereinafter.

■ We think it clear that one who is aggrieved or whose rights are adversely affected by an order which permits without a hearing the assignment or transfer of a construction permit or station license (that is, one who is a "party in interest") may by protesting under § 309(c) obtain a hearing as to the propriety of the pr⌐ested order. This is so because § 310(b) directs the Commission to dispose of an application for assignment or transfer "as if the proposed tranferee or assignee were making application under section 308 of this title for the permit or license in question * * *." The quoted language obviously also makes available to a party in interest the provisions of the related § 309, and particularly the protest provision contained in subsection (c).

The only question is, then, whether the Commission correctly denied the protest on the ground that Camden Radio was not a party in interest. The ruling was based upon the Commission's conclusion that

"* * * there is no showing that, as an existing station, protestant would suffer any economic or other injury from the operation of station ,KPLN by assignee as opposed to its operation by assignor."

In so concluding, the Commission overlooked the fact that the statute requires it to dispose of an application for assignment or transfer as though the pro-

posed assignee or transferee were making an original application for the authorization in question.[4] This statutory provision makes an order permitting the assignment of an authorization subject, in all respects, to protest by a party in interest just as an original grant thereof without a hearing may be protested.

■ It follows that the right of protest against a proposed assignment of a construction permit cannot be limited in the fashion the Commission attempted to limit it. The protest filed by Camden Radio contains the following paragraph:

"Protestant is licensee of station KAMD, Camden, Arkansas, and sells time on its station to Camden merchants, network program sponsors, and to national and regional advertisers. Station KPLN is also located in Camden, Arkansas, and will become a competitor of protestant for local, regional and national advertising. Camden, Arkansas, is a town of some 11,000 population (1950 U. S. Census) and protestant will suffer economic injury from the competition of station KPLN."

This was sufficient to identify it as a party in interest entitled to be heard in protest. Federal Communications Comm. v. Sanders Brothers Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037. As the Commission erred in denying the protest without granting a hearing, the consolidated causes will be remanded so a hearing thereon may be conducted.

Until the Commission decides after the hearing whether to grant or deny the reinstated protest, the order of April 1st will be automatically stayed by the terms of § 309(c). The Commission

will, of course, reconsider that order in the light of the record as supplemented by the proceedings at the hearing. It may decide to grant the protest and so to revoke its consent to the assignment, in which event it probably would institute a proceeding to revoke the undoubtedly tainted construction permit;[5] or it may decide to deny the protest and allow the construction permit to be assigned. We indicate, of course, no opinion as to which course should be taken. But, since it is possible Camden Radio might get administrative relief from the order of April 1st, we think it would be improper for us to review that order on the present incomplete record, which probably will soon be substantially supplemented.

Remanded for proceedings in accordance herewith.

On Petition for Rehearing.

WILBUR K. MILLER, Circuit Judge.

In our opinion, handed down July 15, 1954, we held that, when the Commission has approved without a hearing the assignment of a construction permit, the licensee of an existing station shows himself to be a party in interest, entitled under § 309(c) of the Act to protest and be heard, when he alleges he will suffer economic injury from the operation of the new station. We held no more than that.

■ In a petition for rehearing the Commission again urges that the licensee of the existing station may not protest against its approval of the assignment unless he alleges he will be injured economically by the assignee's operation of the new station, "as opposed to its operation by the assignor."

The Commission's quarrel is in reality not with our opinion but with the rele-

4. Commissioner Hennock stated in a dissenting opinion:
"* * * The distinction attempted by the Commission to support its decision, i. e., that there must be a specific and additional showing of injury stemming from the assignment itself, is wholly without merit. The Act neither makes

provision for nor sanctions such a limitation upon the right of protest."

5. Under the facts now shown of record, the Commission would be justified in doing so, if it chose. Cf. Federal Communications Comm. v. WOKO, 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204.

vant sections of the Act and with the opinion of the Supreme Court in the Sanders Brothers case,[1] where the Commission's contentions (analogous to those it makes in this case) were summarized as being

(a) "* * * that under the Communications Act economic injury to a competitor is not a ground for refusing a broadcasting license and that, since this is so, the respondent was not a person aggrieved, or whose interests were adversely affected, by the Commission's action, within the meaning of § 402(b) of the Act, 47 U.S.C.A. § 402(b), which authorizes appeals from the Commission's orders." 309 U.S. at pages 472, 473, 60 S.Ct. at page 696.

(b) "* * * that as economic injury to the respondent was not a proper issue before the Commission it is impossible that § 402(b) was intended to give the respondent standing to appeal, since absence of right implies absence of remedy." 309 U.S. at page 477, 60 S.Ct. at page 698.

These contentions were rejected by the Supreme Court. It said in 309 U.S. at pages 476, 477, 60 S.Ct. at page 698:

"We conclude that economic injury to an existing station is not a separate and independent element to be taken into consideration by the Commission in determining whether it shall grant or withhold a license.

"*Second.* It does not follow that because the licensee of a station cannot resist the grant of a license to another, on the ground that the resulting competition may work economic injury to him, he has no standing to appeal from an order of the Commission granting the application.

"Section 402(b) of the Act (47 U.S.C.A. § 402(b)) provides for an appeal to the Court of Appeals of the District of Columbia (1) by an applicant for a license or permit, or (2) 'by any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application.'

"The petitioner insists that as economic injury to the respondent was not a proper issue before the Commission it is impossible that § 402(b) was intended to give the respondent standing to appeal, since absence of right implies absence of remedy. This view would deprive subsection (2) of any substantial effect.

"Congress had some purpose in enacting section 402(b) (2). It may have been of opinion that one likely to be financially injured by the issue of a license would be the only person having a sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission in granting the license. It is within the power of Congress to confer such standing to prosecute an appeal.

"We hold, therefore, that the respondent had the requisite standing to appeal and to raise, in the court below, any relevant question of law in respect of the order of the Commission."

Here, just as in the Sanders case, the right to protest does not depend upon whether the protestant will be entitled to relief from the competition which will cause him to suffer economic injury. The mere fact that he will suffer such injury from the operation of the new station entitles him to demand a hearing concerning the assignment of the construction permit which has been approved without a hearing.

*Petition for rehearing denied.*

1. Federal Communications Comm. v. Sanders Brothers Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037.