The **ENTERPRISE COMPANY,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Beaumont Broadcasting Corporation, Intervenor.**

**No. 12577.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 10, 1955.

Decided Dec. 29, 1955.

Danaher, Circuit Judge, dissented.

⊙═417

Mr. Leonard H. Marks, Washington, D. C., with whom Mr. Paul Dobin, Washington, D. C., was on the brief, for appellant.

Mr. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom Messrs. Warren E. Baker, Gen. Counsel, and Warren D. Quenstedt, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. George S. Smith, Washington, D. C., with whom Mr. Edwin S. Nail, Washington, D. C., was on the brief, for intervenor.

Before BAZELON, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The Enterprise Company, appellant, the Beaumont Broadcasting Corporation, intervenor, and KTRM, Inc., each filed with the Federal Communications Commission an application for a construction permit for a new commercial television station at Beaumont, Texas, to operate on Channel 6. As the applications were mutually exclusive, they were designated for hearing in a consolidated proceeding. After the hearing the Commission, disagreeing with the decision of its trial examiner, who had favored the award of the permit to KTRM, granted the application of Beaumont, August 4, 1954,[1] and denied those of Enterprise and KTRM. The decision of the Commission accompanying its order contains an analysis of its reasons. We find no basis upon which to disagree with the decision as of the time it was rendered. However, Enterprise also specifies as error the failure of the Commission to reopen the record to consider evidence of events which occurred subsequent to the order of August 4.

In exposition of the significance of these events we refer first to the reason given by the Commission for granting the permit to Beaumont. The Commission states that the error of its examiner in deciding KTRM should have the permit stemmed principally from her failure to award a preference to Beaumont in regard to diversification and concentration of media for mass communication. The Commission said in part,

"* * * Beaumont Broadcasting merits a clear superiority in this im-

---

[1] The decision of August 4, 1954, is sometimes referred to in the proceedings as having been rendered August 6, 1954.

The decision and order are dated August 4th but were released August 6th.

**710**

portant area of comparison. There being no other significant difference among the applicants, there are no factors offsetting Beaumont Broadcasting's superiority in this regard * * *. Having concluded that this factor of diversification and concentration is the determinative feature in this proceeding, it is well to set forth some of the principles which have guided us in awarding a preference to Beaumont Broadcasting. * * *"

The Commission thereafter added,

"* * * the Commission is unable to conclude that significant differences exist among the applicants in any area of comparison other than that of diversification and concentration of control of media for mass communication. There are, thus, no significant countervailing circumstances or other factors of inferiority or superiority to balance the clear superiority to which Beaumont Broadcasting is entitled in the latter area. * * *"

Of special pertinence, the Commission found that KTRM had an AM broadcast station in Beaumont; that W. P. Hobby, under options held by him, could acquire up to 35 per cent of KTRM's stock and thus become its largest stockholder; that exercise of his option also would enable him to increase his representation on the board of directors to one less than a majority; and that Mr. Hobby was president, director and controlling stockholder of the Houston Post Company, which publishes the *Houston Post* and is the licensee of an AM, an FM, and a TV station, all of which have some overlap of signal into the area to be served by the proposed TV station in Beaumont. Upon reviewing the factual situation in further detail, the Commission concluded,

"* * * Aside from questions of overlap, the preference due Beaumont Broadcasting over KTRM in this matter of diversification and concentration of mass communication media is plainly evident.

* * * Tipping the balance in favor of Beaumont Broadcasting, then, are Hobby's newspaper and FM interests in Houston. When consideration is given to the relatively small area into which the KTRM and Hobby interests are concentrated and to the fact that overlap occurs between the existing KPRC–TV and the proposed KTRM–TV, any remote doubts as to the superiority due Beaumont Broadcasting are emphatically resolved. * * *"

Both KTRM and Enterprise timely petitioned for reconsideration. By order of December 3, 1954, the Commission stayed the effectiveness of its decision of August 4 and set oral argument for December 21, 1954, on the petitions for reconsideration.

In the meantime, December 17, 1954, the Commission was advised of an agreement among Beaumont, KTRM and W. P. Hobby. Enterprise thereupon, December 20, 1954, moved for postponement of oral argument to enable it and the Commission to consider the effects of this agreement. In support of this motion, Enterprise urged that if upon scrutiny the agreement proved material to the comparative qualifications of the applicants, it should have time to move for a reopening of the record. The motion to postpone was denied and argument was held December 21st. By petitions dated December 22, 1954, and January 7, 1955, Enterprise asked the Commission to reopen the record for incorporation of the agreement, and, upon its basis, to find such change in Beaumont's character as to require denial or dismissal of its application and grant of that of Enterprise.

On January 28, 1955, the Commission issued a memorandum opinion and an order affirming its August 4 decision. Enterprise's effort to have the record reopened was rejected, the Commission ruling that it was premature to consider the "executory" agreement. The Commission thereupon refused to modify its finding as to control of media for mass communication. The Commission also sup-

plied an additional reason for its order by concluding that Beaumont should be preferred to Enterprise in the area of programming and possible effectuation thereof, but it still regarded the media of mass communication factor as vital.

The relevancy of the new developments to the highly important question of diversification and concentration of control of media for mass communication is clear. In the words of the Commission the agreement provided,

"* * * that upon the happening of certain contingencies Beaumont Broadcasting will cause to be formed a new corporation to which the television permit granted to Beaumont would be transferred, and in which W. P. Hobby and Beaumont Broadcasting would have interests. One of these contingencies is the reaffirmance by the Commission of the Decision of August 4, 1954."

KTRM was to receive $55,000 of expenses from Beaumont, the successful applicant, for withdrawal of its petition for reconsideration and related pleadings. W. P. Hobby, formerly, as already set forth, a stockholder of KTRM, was to make a loan to Beaumont to enable it to make the payment to KTRM, and was to receive an option to purchase a 32½ per cent stock interest in the new corporation. Beaumont was to hold 62½ per cent of the stock. The construction permit awarded Beaumont was to be assigned to the new corporation. Mr. Hobby was to give up his stock option in KTRM and assign his interest in KTRM to KTRM.

The Commission had found in its August 4 decision that the ownership interests of Mr. Hobby in KTRM tipped the balance against KTRM and in favor of Beaumont. Had his transition to a similar position in a new corporation which was to take over Beaumont's interests occurred before August 4, the balance well might have been tipped from Beaumont to appellant Enterprise or to KTRM. The new arrangements, therefore, argue persuasively in favor of their consideration by the Commission in deciding between Enterprise and Beaumont, KTRM having dropped out as a consequence of the agreement. The executory character of the agreement, in the sense that it was subject to Commission approval, would not have caused its consideration to be premature, for not only had a new factual situation come into being by reason of its execution but the agreement was to become operative as between the parties if the decision of August 4 in favor of Beaumont stood. Therefore, in determining whether that decision should stand it was timely to consider the agreement, if it should be considered at all in connection with the August 4 decision.

We are also told, however, that there must be an end to administrative proceedings so that the public interest will be served by the permittee going forward with the authorized construction. This view has some force in support of the failure of the Commission to reopen; but it is outweighed by other factors. The public interest also requires that the relative merits of competing applicants be weighed before the award goes to either. This is the special purpose of comparative proceedings. And in such proceedings the Commission has repeatedly stressed the importance of the facts regarding concentration or diversification of media for mass communication. Indeed, as the Commission said in its August 4 decision, this was the "determinative feature" of the present case. Furthermore, Mr. Hobby's ownership interests on August 4 were determinative of this particular feature. A shift in those interests among the parties to the comparative proceedings was a shift in the foundations of the August 4 decision. Furthermore, the shift was the result of financial arrangements of such a nature and so timed as to require the Commission to scrutinize them to determine whether or not they constituted an abuse of the Commission's processes. See Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S. App.D.C. 211, 225 F.2d 511. Although the contract was entered into about four

months after August 4 and therefore could not be included as a ground for reconsideration in the petition required by section 405[2] to be filed within 30 days, this raises no statutory or other legal bar to incorporation of the facts in the record. This is so because the August 4 decision was still open. It had not become final in the sense that it was no longer subject to change upon reconsideration. The Commission itself recognized this as late as December 3, 1954, when it stayed its August 4 order "in order to maintain the status quo, pending disposition by the Commission of the petition for reconsideration and rehearing filed in the subject petition." Even if Enterprise could not as of right obtain reconsideration based on events which occurred after the record was originally closed or after its petition for reconsideration was filed, questions we lay aside, the Commission had power to grant such reconsideration. As we held in Albertson v. Federal Communications Commission, 87 U.S.App.D.C. 39, 41–42, 182 F. 2d 397, 399–401, jurisdiction over an order remains with the Commission until the time for appeal has expired, and that time is tolled by an application for rehearing. See, also, Fleming v. Federal Communications Commission, 96 U.S. App.D.C. 223, 225 F.2d 523.

It is urged that the proceedings had lost a comparative character, and therefore that the Commission could consider the agreement only under section 310 (b),[3] separate and apart from any further comparison of Beaumont's qualifications with those of Enterprise. This is another way of pressing the argument of finality. But, we repeat, the events in question, though they occurred subsequent to the August order and the petition for reconsideration, struck at the very basis which had been assigned by the Commission for its decision, and were disclosed at a time when the decision was still open for reconsideration. In these circumstances nothing in the language of sections 310(b) or 405 deprived the Commission of power to receive the new evidence and to reconsider or redecide the case on a comparative basis. If this is not done the advantages of the comparative hearing are lost and its purposes frustrated. Section 310(b), important as it is in the total scheme of the Act, is no substitute for the comparative procedures available to applicants for the same permit. That section covers the situation where a transfer, assignment or other disposition of a construction permit or station license or any right thereunder, or a transfer of control of any corporation holding any such permit or license, is desired. Application must be made to the Commission, which must find that the public interest, convenience and necessity will be served thereby. Obviously these provisions do not come into play so long as a comparison between competing applicants is or should be active; and we hold that unless such comparison is kept active to take into account the new agreement here involved the rights of competing applicants are denied. Enterprise, KTRM and Beaumont had applied for the same permit. The permit was granted to Beaumont primarily because of the Hobby interests in KTRM and because, on other grounds, Beaumont was found to be superior to Enterprise. While the proceedings were still before the Commission on petition for reconsideration the Hobby interests became the subject of an agreement with Beaumont for their transfer from KTRM to a new corporation in which Beaumont was to have 62½ per cent of the stock and Hobby 32½ per cent. Unless Enterprise is considered comparatively with Beaumont after Beaumont entered into this agreement the proceedings lose their comparative character. Though the agreement could not become effective without Commission approval, it had been made. The very making of it, and its terms, constituted important new facts bearing upon the relative merits of the two remaining

---

2. 66 Stat. 720 (1952), 47 U.S.C.A. § 405, amending 48 Stat. 1095 (1934).

3. 66 Stat. 716 (1952), 47 U.S.C.A. § 310 (b), amending 48 Stat. 1086 (1934).

applicants.[4] Furthermore, unless Enterprise can be heard comparatively with respect to those new facts its status as an applicant is lost. It could then object or protest, not as a competitor of Beaumont for the permit itself, but only as "any party in interest" after a final award had been made to Beaumont.

The Commission must have latitude in bringing finality to its choice between applicants but the circumstances to which we have referred impel us to conclude that in the public interest the Commission, in the exercise of a sound discretion, should have reopened the record for reception of evidence of the new developments and to complete comparative consideration in light of those developments. This does not mean that the grant of the permit to Beaumont must now be set aside by us, or must be set aside by the Commission when it reopens the record and considers the new evidence. Whether or not the permit to Beaumont should be revoked, or should be awarded to Enterprise, is for the initial decision of the Commission after taking account of this evidence in reappraising the comparative qualifications of Beaumont and Enterprise. The Commission should also consider the changed financial status of these applicants due to the agreement, as well as the terms and character of the agreement as they bear upon the processes of the Commission and the public interest. See Clarksburg Publishing Co. v. Federal Communications Commission, supra.

Reversed and remanded for further proceedings consistent with this opinion.

DANAHER, Circuit Judge (dissenting).

Following protracted rule-making proceedings, the Commission, in the public interest, allocated television Channel 6 to Beaumont, Texas. Three mutually exclusive applications for that channel having been filed and consolidated, comparative hearings on designated issues were commenced November 17, 1952, three years ago. After extended hearings and many procedural steps, on August 6, 1954, the Commission released its final decision of August 4, 1954, finding Beaumont superior to its competitors. Petitions for rehearing were filed by KTRM and by Enterprise. The Commission issued the awarded construction permit to Beaumont on September 9, 1954, calling for construction to commence not later than October 4, 1954, and to be completed not later than April 4, 1955. Construction went forward accordingly. Oral argument on the petitions for rehearing[1] was set for December 21, 1954, and Enterprise and Beaumont were then granted an *en banc* hearing, KTRM having withdrawn its petition on December 17, 1954. The Commission on January 28, 1955, released its Memorandum and Order, reflecting in great detail its further consideration of the Beaumont and Enterprise claims, and affirmed its August 4, 1954, decision by which Beaumont had been established as comparatively superior and entitled to the award. Procedurally, the Commission had followed meticulously the essential steps outlined in Johnston Broadcasting Co. v. Federal Communications Comm.,[2] and thereupon not once, but twice concluded that, comparatively, Beaumont had demonstrated its superiority over Enterprise. The requirements of public interest, convenience and necessity had been met, and after more than two years of litigation, the public was entitled to television service, and by Beaumont.

Without more, I take it, that would have ended the matter, and had review been sought, we would have been bound to affirm. Enterprise came here seeking a stay, urging then the substance of its present argument, but another division

---

4. We assume that KTRM is no longer an applicant.

1. Certain related pleadings were involved but are not itemized since they are immaterial for present purposes.

2. 1949, 85 U.S.App.D.C. 40, 175 F.2d 351.

of this court, on March 8, 1955, declined to stay the Commission's August 4, 1954, order, as affirmed January 28, 1955. If Beaumont in its construction complied with the conditions of § 319, and of the Act, Beaumont was entitled to a *station* license, at this point without regard to the provisions of § 309(a), (b) and (c) of the Act.

If *thereafter,* the station license had been issued, and if Beaumont had sought to assign its station license to some other entity, Beaumont would have been bound under § 310(b) to file an application with the Commission seeking its approval, to be granted *only* if the Commission could find "that the public interest, convenience, and necessity will be served thereby." [3] Lacking Commission approval, the Beaumont Broadcasting Corporation simply may not assign its station license. Thus the Commission is charged by the Act and subject to its terms, to execute the Congressional will with respect to the regulation of radio broadcast licensing.

Turning now to the facts in the instant case, the majority correctly states: "We find no basis upon which to disagree with the decision as of the time it was rendered [August 4, 1954]." I agree that must be so. The construction permit was issued September 9, 1954, and Beaumont was bound by § 405 to go forward in accordance with its terms and has done so at vast expense. The filing of petitions for rehearing before the Commission under § 405 "does not even stay the order, much less vacate or nullify it." [4] With the order thus in full force and effect, but before the argument of the rehearing petitions, the Beaumont Broadcasting Corporation in December 1954 concluded a certain option agreement with KTRM and one Hobby.

Beaumont agreed "that it will diligently continue to seek to have the Commission reaffirm the grant to it (Beaumont) of the construction permit heretofore awarded to it." Thereafter, but only upon notice from Hobby of his intention to exercise the option referred to by the majority, Beaumont "will forthwith make application to the Commission and will diligently seek the effective consent of that body to the assignment" to a corporation to be formed by Beaumont. *"Upon the condition that such consent or approval of the Commission is obtained, Beaumont will thereupon transfer and assign to the new corporation the said construction permit * * *,"* [5] and will issue "to Hobby, upon payment therefor" 32½ per cent of the stock in the corporation to be formed. Meanwhile, against Beaumont's note,

---

3. Congress in 1952, in its first major overhaul of the 1934 Act, deliberately and with complete understanding of the problem, indeed over the Commission's opposition, amended § 310(b). In applying the public interest, convenience and necessity test, the Commission must proceed as though the proposed assignee and no other person were applying for the license under § 308. See p. 12, H.R. Rep. No. 1750 to accompany S. 658, 82d Cong., 2d Sess. (1952). And see Camden Radio v. Federal Communications Commission, 1954, 94 U.S.App.D.C. 312, 220 F.2d 191, rehearing denied (1955).

   Our former distinguished colleague Judge Justin Miller explained to the House Committee on Interstate and Foreign Commerce:

   "This amendment would require the Commission to approve a transfer upon a finding that the transferee possesses the qualifications required under the Communications Act. The new language is designed to make certain that no construction permit or station license granted by the Commission may be transferred without the Commission's approval; to make definite the procedure to be employed by the Commission in passing upon transfer applications; and to clarify the standard to be applied by the Commission in passing upon the merits of the application.

   "One of the purposes of the proposed new language is to prevent any such policy as the AVCO rule * * *." Hearings on S. 658 before the Committee on Interstate and Foreign Commerce of the House, 82d Cong., 1st Sess. 354 (1951).

4. KFAB Broadcasting Co. v. Federal Communications Comm., 1949, 85 U.S. App.D.C. 160, 162, 177 F.2d 40, 42.

5. Emphasis supplied.

Hobby loaned Beaumont $55,000 to reimburse KTRM for "the sums expended by it in connection with the preparation and prosecution of its application for a television construction permit," and KTRM withdrew from the proceedings as of December 17, 1954. Hobby's option to subscribe and pay for 32½ per cent of the stock in the corporation to be formed by Beaumont was to run for 18 months, subject to extension. "This agreement is on the condition that it well and truly meets any and all requirements of the Commission, and/or any State or Federal authority having jurisdiction in the premises."

The corporation has *not* been formed. Beaumont Broadcasting Corporation has filed *no* application for assignment of its construction permit. If and when there is before the Commission some such application, both the statute, § 310(b) and Commission Rule 3.634 [6] require Commission approval as a condition precedent before there may be a valid voluntary assignment of a television station construction permit.

Beaumont filed a copy of the option agreement pursuant to the Commission's "information" rule. Had it not done so before the December 21, 1954 argument, had it withheld the information until after the January 28, 1955 memorandum notwithstanding the execution of the agreement in December, a very different situation might well be said to have arisen. Here, however, on this record, there was no concealment. There was no fraud. There was no abuse of the Commission's processes.[7] Enterprise here was heard and its claims to preference were reviewed at length pursuant to its petition for rehearing. Of course, as the majority says: "The Commission had power to grant such reconsideration." There is no issue on this point for the Commission exercised its dis-

cretion and it *did* grant reconsideration. Then, after oral argument and further consideration, for a second time the Commission found Beaumont superior to Enterprise. Now, more than three years since the comparative hearing was commenced, the majority would order another comparative hearing on an issue which has not yet arisen and may never arise.

One of the chief reasons why KTRM was found inferior in the first comparative hearing was the presence of the Hobby interests in the KTRM corporate structure. If, as a matter of public policy, that were a valid reason for the elimination of KTRM in the first place, it would seem that it will be a critical factor in the Commission's consideration of an application, *if and when filed*, by Beaumont Broadcasting Corporation to assign its permit to a corporation to be formed which will also include the Hobby interests. I would expect that the Commission at the time of any such application would give to this factor at least as much weight as it received in the first place. We are not justified in anticipating what action the Commission will take if and when it is asked to take action on an application for assignment. It is perfectly obvious from the terms of the option agreement that the parties recognize that it may never become operative for the very reason that the Commission may withhold its approval.

I understand the majority to say that the Commission is bound to set aside its grant to Beaumont and to order a new comparative hearing with respect to developments since the original August 4th award, in which comparative hearing Enterprise and Beaumont must again be considered as competitors on a comparative basis as though Hobby were already a stockholder in a corporation not yet formed. I cannot read the statutes so, although I have tried to accom-

6. 47 C.F.R. § 3.634.

7. Cf. Clarksburg Pub. Co. v. Federal Communications Comm., 1955, 96 U.S. App.D.C. 211, 225 F.2d 511, cited by the majority. There the *only* other applicant "dropped out" the day before the award to Ohio Valley. Moreover in the light of various factual deficiencies in the record, we found the Commission's "demurrer" procedure ill-adapted to fulfillment of the hearing requirements of § 309(c).

modate my views to those of my able colleagues whose judgment I respect.

It seems to me that there are two distinct safeguards contemplated in the statutory scheme. One is found in § 319 (c) which authorizes the Commission before issuing a station license to take account of "cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the [construction] permit". The Commission must exercise its judgment as to whether or not such new cause or altered circumstances "make the operation of such station against the public interest". If the station license cannot "conform generally to the terms of said [construction] permit", or if the public interest will not be served as a result of such changed circumstances, the Commission may condition the grant of a station license upon a divestiture of any Hobby connection with the proposed new corporation, or otherwise limit the grant to Beaumont Broadcasting Corporation *as presently constituted*. Authority for such Commission action clearly exists under § 303(r).[8]

Again, the public has the additional protection that under § 310(b) the Commission must find, if and when an application for assignment is submitted, whether the "public interest, convenience, and necessity will be served thereby" not only with reference to *any* assignment, but with reference to the particular proposed assignee under § 308.

To the Commission has been entrusted the administration of the regulatory authority of the Congress in the radio broadcasting field. The machinery of the statutes was set in motion and here culminated, after the required comparative hearing, in an award based on amply sustained findings that Beaumont is superior. In the exercise of our judicial function, it is certainly not within our province to say that the award should have gone to someone else. Should our powers as a court later be invoked with reference to some *different* step as a *different* stage, we then may consider whether or not the Commission has erred in its administration of the Act. As I read Mr. Justice Frankfurter's opinion in Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 144–145, 60 S.Ct. 437, 442, 84 L.Ed. 656, our function under the Communications Act is "restricted to a purely judicial review." To paraphrase language quoted by him we ask: (1) did the Commission apply the legislative standards validly set up; (2) did it act within or go beyond the authority conferred upon it; (3) did its proceedings satisfy the pertinent demands of due process; (4) was there compliance with the legal requirements which fix the function and govern the action of the Commission? If, within those standards, the Commission has acted properly it is our duty to affirm. It is not our task to supervise the Commission's course for "courts are not charged with general guardianship against all potential mischief in the complicated tasks of government. * * * Interference by the courts is not conducive to the development of habits of responsibility in administrative agencies." Id. 309 U.S. at page 146, 60 S.Ct. at page 443. Moreover, if abuses develop in the conduct of an administrative agency, it is primarily the duty and the concern of the Executive to correct the situation, or the people will. That is the very basis upon which, under our constitutional form of government, there is a division of responsibility. It is the duty of the Executive to execute the legislative policy. It becomes *our* duty to ascertain whether or not there has been error, judicially reviewable, in the agency action complained of. As I read this record, the Commission has done exactly what it was called upon to do by the applicable statutes. What may happen in the future is not yet our concern. I would affirm.

8. Cf. Regents of University System of Ga. v. Carroll, 1950, 338 U.S. 586, 600, 70 S.Ct. 370, 94 L.Ed. 363.