**CHANNEL 16 OF RHODE ISLAND,
Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**

**Cherry & Webb Broadcasting Company, Intervenor.**

**No. 12537.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 4, 1955.

Decided Jan. 12, 1956.

---

1. Carter v. Forrestal, 1949, 85 U.S.App. D.C. 53, 175 F.2d 364, certiorari denied, 1949, 338 U.S. 832, 70 S.Ct. 47, 94 L. Ed. 507.

sion, with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and Warren D. Quenstedt, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Thomas H. Wall, Washington, D. C., with whom Messrs. Thomas J. Dougherty, Paul A. O'Bryan and William P. Sims, Jr., Washington, D. C., were on the brief, for intervenor.

Before PRETTYMAN, WILBUR K. MILLER and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

When their mutually exclusive applications for a construction permit for a television broadcast station at Providence, Rhode Island, had been pending for some time but had not been heard, Cherry & Webb Broadcasting Company, Hope Broadcasting Company and Greater Providence Broadcasting Company entered into a so-called merger agreement.[1] By its terms Hope and Greater Providence were to withdraw their applications, thus avoiding a comparative hearing by leaving Cherry & Webb unopposed. The latter agreed that, as soon as it had obtained a construction permit, it would forthwith (a) organize a new corporation with an authorized capital of $100,000.00, divided into 1,000 shares having a par value of $100.00 each, and (b) file with the Commission and prosecute an application to transfer its construction permit to the new corporation. Cherry & Webb, Hope and Greater Providence agreed to take and pay for at par 550, 250 and 200 shares, respectively, of the capital stock of the new corporation. Cherry & Webb agreed to obtain loans for the new corporation in the sums necessary to construct a television station, it being provided that the sum of

Mr. Benedict P. Cottone, Washington, D. C., with whom Mr. Arthur Scheiner, Washington, D. C., was on the brief, for appellant.

Mr. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commis-

1. Although the contract is referred to by the parties as an agreement of merger, it was not technically such. The three contracting companies did not agree to merge into a single corporation, but merely agreed to subscribe and pay for the capital stock of a new corporation to which Cherry & Webb would assign the construction permit, when issued, if the approval of the F.C.C. could be obtained.

$100,000.00 realized from the sale of stock should be used for working capital.

Robert T. Engles and C. George Taylor were also parties to the contract, which recited they had "formerly held a forty per cent interest in the Greater Providence Broadcasting Company." Engles and Taylor were granted an option to acquire, subject to prior approval by the Federal Communications Commission, certain shares of the capital stock of the proposed new corporation.[2]

Pursuant to the terms of the contract and on the day of its execution, September 1, 1953, Hope and Greater Providence dismissed their applications. Cherry & Webb filed on the same day an amendment to its application to which it attached a copy of the merger agreement. The amendment contained the following: "In the event the provisions of said agreement are not consummated, applicant will be the owner." Two days later, September 3, 1953, the Commission issued a construction permit to Cherry & Webb, "without prejudice to any action Commission may take with respect to any future application to effectuate agreement made Sept. 1, 1953 between permittee and Hope B/cg Co., Greater Providence B/cg Co., and Robert T. Engles and C. George Taylor, submitted as part of Cherry & Webb application." September 18, 1953, Cherry & Webb applied for a special temporary authority (STA) to operate its television station, on an interim basis, which was granted September 25.

These authorizations were promptly protested by Channel 16 of Rhode Island, Inc., under § 309(c) of the Communications Act, 47 U.S.C.A. § 309(c). Channel 16 contended among other things that Cherry & Webb had already expended large sums in the construction of its pro-

---

2. Because of the unusual nature of the option and because it loomed large in argument before us, we reproduce certain provisions of the merger agreement which are pertinent:

"5. In consideration of the withdrawal of their interests by the Fourth Parties [Engles and Taylor] from the Third Party [Greater Providence] to permit this agreement be carried out and a construction permit issued under the Rules and Regulations of the Federal Communications Commission without a hearing, the First [Cherry & Webb] and Second [Hope] parties do hereby grant to the Fourth Parties an option to acquire 130 shares of the common stock of Cherry & Webb Television Broadcasting Company [the new corporation] from the shares subscribed to by the said First and Second parties under the following terms and conditions.

"a. The First Party [Cherry & Webb] does hereby grant to the Fourth Parties [Engles and Taylor], an option to acquire 110 shares at a par value of $100.00 per share, from the total of 550 shares for which it has subscribed.

"b. The Second Party [Hope] does hereby grant to the Fourth Parties [Engles and Taylor], an option to acquire 20 shares at a par value of $100.00 per share from the total of 250 shares for which it has subscribed.

"c. The said Fourth Parties [Engles and Taylor] shall have the right to ac-quire the said shares upon exercise of this option in equal proportions from the said optionors—i. e. 65 shares to Robert T. Engles and 65 shares to C. George Taylor.

\* \* \*

"e. This option shall be in full force and effect for a period of 12 months from the time that the Commission approves the assignment of the construction permit of television facilities to Cherry & Webb Television Broadcasting Company [the new corporation]; however, if at any time prior to the said expiration date, but not before 7 months from the said time that the Commission finally approves the assignment of the construction permit to Cherry & Webb Television Broadcasting Company. the First [Cherry & Webb] and Second [Hope] parties desire to cancel same, they shall pay a total sum of $205,500.00 in cash at the time of the said cancellation, in consideration therefor, which sum shall be divided equally between the Fourth Parties [Engles and Taylor].

"f. Since the exercise of this option by the Fourth Parties may involve a surrender of control of Cherry & Webb Television Broadcasting Company [the new corporation], it is agreed that the Fourth Parties may not exercise the same unless and until an application is filed with the Federal Communications Commission requesting said approval and the said approval has been obtained."

posed television station before the construction permit was issued, so that the grant of the permit was in violation of § 319(a) of the Act, 47 U.S.C.A. § 319(a); and that the provisions of the contract concerning the option of Engles and Taylor provided for excessive consideration to be paid to those withdrawing parties. The Commission found that the protestant was a party in interest and that its protest met the requirements of § 309 (c). Accordingly, it stayed the effectiveness of the grants to Cherry & Webb and designated its application for hearing under § 309(b) upon six enumerated issues.

The first five issues were designed to elicit factual information (a) concerning the merger agreement; (b) concerning the stockholders, directors and officers of the new corporation proposed therein, and their connection with any existing or proposed broadcast station in Providence or elsewhere; (c) and concerning the nature and cost "of all construction of a proposed television station or part thereof, undertaken by Cherry & Webb Broadcasting Company prior to the issuance of any instrument by the Commission authorizing the commencement of such construction."

The purpose of the sixth issue was to determine, in the light of the facts developed under the first five, whether a grant of Cherry & Webb's application would be consistent with the Act, with the Commission's policies and practices established thereunder, and with its rules and regulations; "and whether the procedures followed meet the requirements of Section 3(a) of the Administrative Procedure Act [5 U.S.C.A. § 1002 (a)] and due process of law." Having defined the six issues, the Commission ordered that:

"(1) The hearings on issues '(1)' to '(5)', inclusive, shall commence at 10:00 A. M. on November 18, 1953 and shall be held before an Examiner to be specified by the Commis-

sion who shall issue an initial decision setting forth findings of fact based on the record before him with respect to said issues and upon the issuance of such findings shall certify the record of the proceedings to the Commission; and

"(2) The parties to the proceedings shall have 15 days after issuance of the Examiner's findings to file exceptions thereto and 7 days thereafter to file replies to any such exceptions; and

"(3) At a time to be designated by further order, the Commission *en banc* will hear oral argument on any exceptions filed to the Examiner's findings and, in addition, will hear argument on issue '(6)'.

"(4) Subsequent to such oral hearing, the Commission shall issue a decision in these proceedings, which decision shall constitute the final decision of the Commission in this matter."

Channel 16 objected to this hearing procedure and urged that it be revised to conform with § 409(b) of the Communications Act, 47 U.S.C.A. § 409(b). Although Cherry & Webb did not object to the suggested revision, the Commission refused to change the hearing procedure originally ordered.

The hearing began, as ordered, November 18, 1953, before an examiner who issued an initial decision April 27, 1954, which contained findings of fact on the first five issues.[3] September 15, 1954, the Commission, with four members present, heard oral argument limited to 20 minutes for each party. Apparently because of an equal division of opinion among the four Commissioners, reargument was heard *en banc* December 27, 1954. In an order entered January 5, 1955, Cherry & Webb's construction permit and STA were made immediately effective. Channel 16 appeals from that order and from those which granted a construction permit and an STA to Cherry & Webb.

---

3. The initial decision is largely a summary of the proofs presented to the examiner, with very few actual factual findings by him.

**524**

Appellant's first argument is that the order of January 5, 1955, must be set aside because the Commission did not follow the procedure prescribed by law for the conduct of hearings under § 309(b) of the Act. That procedure is set forth in § 409(b), which is as follows:

"(b) The officer or officers conducting a hearing to which subsection (a) applies [every case which involves agency process for the formulation of an order] shall prepare and file an initial decision, except where the hearing officer becomes unavailable to the Commission or where the Commission finds upon the record that due and timely execution of its functions imperatively and unavoidably require that the record be certified to the Commission for initial or final decision. In all such cases the Commission shall permit the filing of exceptions to such initial decision by any party to the proceeding and shall, upon request, hear oral argument on such exceptions before the entry of any final decision, order, or requirement. All decisions, including the initial decision, shall become a part of the record and shall include a statement of (1) findings and conclusions, as well as the basis therefor, upon all material issues of fact, law, or discretion, presented on the record; and (2) the appropriate decision, order, or requirement."

In this case the examiner who conducted the hearing did not become unavailable, nor did the Commission find "upon the record that due and timely execution of its functions imperatively and unavoidably require that the record be certified to the Commission for initial or final decision." The order for the hear-

ing did not explain why the Commission had devised a non-statutory hearing procedure. Its later statement that it had done so in order to "bring a needed television service to Providence as quickly as possible consistent with the requirement of law" is not convincing in view of the time-consuming process which was ordered. The examiner would have needed very little additional time to prepare an initial decision such as the statute requires.

Because of this failure of the Commission to observe statutory procedure, it is necessary for us to hold its action in this case unlawful and to set it aside for that reason alone,[4] without reaching the other reasons for reversal advanced by appellant. In so doing we have taken due account of the rule of prejudicial error, as we are admonished to do by the statute quoted in the margin. The Commission itself noted "that serious questions have been raised concerning the Commission's action in granting said authorizations." In the resolution of those questions, Channel 16 and indeed all the parties were entitled to participate in a full hearing of the nature prescribed by law. They were not allowed to do so.

Consequently we must remand the case for rehearing in accordance with the procedure prescribed by § 409(b) of the Act. In proceeding on remand the Commission and its examiner should consider the "serious questions" which are presented in the light of our opinions in the Clarksburg, Federal and Enterprise cases,[5] all of which have been handed down since the Commission rendered the decision which is here under review.

Reversed and remanded.

4. The Administrative Procedure Act, 5 U.S.C.A. § 1009(e), provides that: " * * * [T]he reviewing court shall * * * hold unlawful and set aside agency action, findings, and conclusions found to be * * * without observance of procedure required by law * * *. In making the foregoing determinations

* * * due account shall be taken of the rule of prejudicial error."

5. Clarksburg Publishing Co. v. F. C. C., 1955, 96 U.S.App.D.C. 211, 225 F.2d 511; Federal Broadcasting System v. F. C. C., 1955, 96 U.S.App.D.C 260, 225 F.2d 560; Enterprise Co. v. F. C. C., — U.S.App.D.C. —, 231 F.2d 708.