**TENNESSEE TELEVISION, INC.,**
**Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**
**WBIR, Inc., Intervenor.**
**Nos. 13168, 13507, 13905.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 2, 1958.

Decided Nov. 28, 1958.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for appellant.

Mr. John H. Conlin, Counsel, Federal Communications Commission, for appellee. Messrs. Warren E. Baker, General Counsel, Federal Communications Commission, at the time the brief was filed, Richard A. Solomon, Asst. General Counsel, Federal Communications Commission, Charles C. McCarter and Mark E. Fields, Counsel, Federal Communications

Commission, were on the brief for appellee. Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. William P. Sims, Jr., Washington, D. C., with whom Messrs. Thomas H. Wall and Jerome H. Heckman, Washington, D. C., were on the brief for intervenor.

Before BAZELON, FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

Three mutually exclusive applications were filed with the Commission for a construction permit for a new television broadcast station on channel 10 in Knoxville, Tennessee. The applicants were intervenor radio station WBIR, Inc., Scripps-Howard Radio, Inc., and appellant Tennessee Television, Inc. After a comparative hearing in a consolidated proceeding the Commission granted the application of intervenor and denied the others. The merits of this decision are involved in the appeals of Tennessee Television, Inc., in Nos. 13168 and 13905,[1] which we treat first. Scripps-Howard, Inc., does not pursue an appeal so the contest as to the validity of the grant of intervenor's application now lies between appellant on the one hand and intervenor and the Commission on the other.

Both appellant and intervenor were found by the Commission to be legally, technically, and financially qualified. The Commission accordingly entered upon a detailed consideration of their comparative qualifications, in the course of which it gave preferences to appellant in certain areas and to intervenor in other areas. With respect to still other comparative criteria in issue the Commission found neither applicant to be superior to the other.

The principal contention of appellant is that three of the four preferences accorded intervenor—prior performance as broadcast licensee, prior radio and television experience, and program implementation—[2] stem from the fact that intervenor and its stockholders are already multiple licensees of the Commission, owning various stations in other locations, and that in permitting these preferences to outweigh those accorded appellant—local ownership, civic participation, diversification of mass media, and diversification of television interests—the Commission virtually disregarded the diversification and anti-monopoly policy of the Communications Act, 47 U.S.C.A. § 151 et seq.

■ The contention has a certain theoretical soundness. The public interest in diversification of the media of mass communication cannot be nullified by according to an experienced applicant, around whom there is a concentration of such media, preferences attributable to the experience it possesses because of such concentration. On the other hand, a newcomer, such as appellant, holding the advantage of affording a new and independent medium for the dissemination of programs, cannot rest unduly upon this one advantage; it must still compete in other areas which are of importance to the process of final selection by the Commission. Cf. Massachusetts Bay Telecasters, Inc. v. F. C. C., —— U.S.App.D.C. ——, 261 F.2d 55. It is in these other areas, considered with the preferences of appellant, that we find reasonableness in the Commission's decision to award the permit to intervenor. In addition to preferring intervenor on integration of own-

---

1. The appeal in No. 13168 is from the original decision of the Commission granting intervenor's application and denying those of the other applicants. No. 13905 embraces questions concerning modification of the basic decision involved in No. 13168 and is also an appeal from denial of a petition for rehearing which had been filed by Scripps-Howard Radio, Inc.

2. Intervenor was also preferred as to integration of ownership with management. Appellant contends intervenor was entitled to only a slight preference in this regard, or only to a rating of equality. In no circumstances, it contends, could this factor be decisive since both applicants proposed a relatively high degree of integration.

ership with management, n. 2, *supra,* the Commission, with adequate support in the evidence, also gave a preference to intervenor for more positive correlation between program planning and securing effective cooperation from local groups. There is a basis for considering this a significant weakness in appellant's case since it is a purely local group and has been accorded a preference on that ground.

■ The diversification of media of communication that would result were the permit granted to appellant does not on the record so clearly warrant selection of appellant in the public interest as to outweigh other public benefits of the award to intervenor, at least to a degree that requires substitution of our judgment for that of the Commission. The Commission weighed all competing considerations, stating that it was apparent appellant was superior not only with regard to diversification but also in local ownership and civic participation; however, the Commission added,

"[W]e cannot conceive that the ownership by WBIR in Knoxville of a television station can be of such grave concern as to outweigh WBIR's marked superiority in most other respects."

This was a conclusion we must recognize as one the Commission could reasonably reach on the record. We find no such neglect of competing and relevant factors as would permit us to disturb the decision under the principles governing our review. The choice of intervenor does not rest simply upon its strength in matters that might be attributable to concentration of media of communication, but in good part upon the relative weakness of appellant in other respects.

■ The appeal in No. 13507 is from an order of the Commission denying without a hearing appellant's protest and petition for reconsideration of ex parte action by the Broadcast Bureau of the Commission in granting intervenor's application for modification of the permit awarded to it in the comparative proceedings. The Commission ruled that appellant had no standing to protest or request reconsideration; that is, that appellant was not a "party in interest" or a "person aggrieved or whose interests are adversely affected" within the meaning of the Communications Act. We think this ruling is correct. To have standing to protest the grant of an application for modification of a permit, or to obtain reconsideration of such a grant, one must be adversely affected or aggrieved by the proposed modification itself.[3] The proposed modifications were (1) to change the location of the antenna supporting tower at the transmitter site 173 feet; (2) to increase the antenna height approximately 65 feet; (3) to change the main studio location within the Knoxville city limits; and (4) to change the type of transmitter, antenna, and other minor pieces of technical equipment. It does not appear how appellant is adversely affected or aggrieved by any of these proposals, since they affect no question involved in the decision favorable to intervenor in the comparative proceedings.

The case is different from McClatchy Broadcasting Co. v. F. C. C., 99 U.S.App. D.C. 199, 239 F.2d 19, certiorari denied Sacramento Telecasters, Inc. v. McClatchy Broadcasting Co., 353 U.S. 918, 77 S.Ct. 662, 1 L.Ed.2d 665,[4] because here, in contrast with the situation there, the proposed modifications do not contemplate any such changes as would make the modified permit a new "grant," or significantly affect the comparative qualifications of the applicants. The protest proceedings are not concerned with matters that have any impact adverse to

3. To be "adversely affected or aggrieved" is synonymous with being a "party in interest." Camden Radio v. F. C. C., 94 U.S.App.D.C. 312, 220 F.2d 191, 194; Granik v. F. C. C., 98 U.S.App.D.C. 247, 234 F.2d 682, appeals dismissed 102 U.S.App.D.C. 258, 252 F.2d 822.

4. See, also, Enterprise Co. v. F. C. C., 97 U.S.App.D.C. 374, 231 F.2d 708, certiorari denied Beaumont Broadcasting Corp. v. Enterprise Co., 351 U.S. 920, 76 S.Ct. 711, 100 L.Ed. 1451.

appellant in respects pertinent to the interest which gave it standing, namely, the interest of an applicant for the permit. That interest does not attach to the protest proceedings so long as the comparative qualifications of the applicants are not affected by the modifications which are the subject of the protest.[5]

Affirmed.

BAZELON, Circuit Judge (concurring in part and dissenting in part).

I concur in the result in No. 13507 solely on the authority of McClatchy Broadcasting Co. v. Federal Communications Comm., 1956, 99 U.S.App.D.C. 199, 239 F.2d 19, certiorari denied Sacramento Telecasters, Inc. v. McClatchy Broadcasting Co., 1957, 353 U.S. 918, 77 S.Ct. 662, 1 L.Ed.2d 665. I read that case to hold that an unsuccessful participant in the comparative proceeding for a construction permit has no standing to protest a subsequent modification of the construction permit unless the modification is so substantial as to affect the underlying basis of the original award.

I dissent, however, from the court's decision in No. 13168 and No. 13905, affirming the Commission's award of a construction permit to WBIR for Channel 10, Knoxville, Tennessee. The court recognizes that the source of every preference which the Commission accorded WBIR over Tennessee Television, apart from the preference accorded for integration of management and ownership, arose from the extensive ownership of communications facilities by WBIR stockholders. This genesis is equally true of the preference for "correlation between program planning and securing effective cooperation from local groups," upon which the court so strongly relies in its support of Commission action.[1] I think that by thus attributing to these by-products of concentration a greater degree of importance than it attributes to the traditional, and antipodal, preference for decentralization of ownership of the mass media of communication, the Commission has effectively nullified the diversification and anti-monopoly policy long since recognized as "one of the basic underlying considerations in the enactment of the Communications Act."[2]

There may be cases in which the Commission can properly find that experience resulting from an applicant's ownership of communications facilities offsets a competing applicant's freedom from ownership of other communication interests. But "Commission expertise alone cannot support so pivotal [a divergence]" from

5. It goes without saying that if there are known to the parties or should come to their knowledge, any circumstances outside the record before us which might affect the validity of the Commission's decision, they will be brought promptly to the attention of the court. Cf. Sangamon Valley Television Corp. v. United States, 79 S.Ct. 94; WIRL Television Corp. v. United States, 79 S.Ct. 94.

1. The preference for "correlation between program planning and securing effective cooperation from local groups" is, in fact, identical to the preference for "program implementation," cited by the court as an incident of concentration. Program implementation was not in itself a category utilized by the Commission as a basis for comparison in the combined hearings below. Rather, program implementation was considered under the more general heading of "program plans." Under the latter heading, the Commission had found that no preference existed between WBIR and Tennessee TV as to their "program proposals," another sub-topic of "program plans." The Commission had found, however, that WBIR had more fully attempted to implement its proposals by securing the cooperation of local groups. It therefore accorded WBIR a preference on the broad category of "program plans." But WBIR's ability to implement effectively its program plans followed directly as a result of the contacts which WBIR previously had made in radio broadcasting operations, and therefore resulted directly from WBIR's ownership of other mass media of communication.

2. Multiple Ownership, F.C.C. Report and Order 18 Fed.Reg. 7796, 7797 (1953), citing Federal Comunications Comm. v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037.

basic communications philosophy.[3] A convincing explanation is required.[4] That explanation is not to be found in the one offered by the Commission:

"Thus, with regard to the factor of diversification, we cannot conceive that the ownership by WBIR in Knoxville of a television station can be of such grave concern as to outweigh WBIR's marked superiority in most other respects."

---

**3.** See Washington Gas Light Co. v. Baker, 1950, 88 U.S.App.D.C. 115, 120–121, 188 F.2d 11, 16–17, certiorari denied 1951, 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686.

**4.** Johnston Broadcasting Co. v. Federal Communications Comm., 1949, 85 U.S. App.D.C. 40, 175 F.2d 351.