**W. S. BUTTERFIELD THEATRES, Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**WJR, The Goodwill Station, Inc., Intervenor.**

**TREBIT CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**WJR, The Goodwill Station, Inc., Intervenor.**

**Nos. 12527, 12666, 12752, 12528, 12667, 12753.**

United States Court of Appeals District of Columbia Circuit.

Argued March 13, 1956.

Decided May 24, 1956.

Intervenor's Petition for Rehearing in Banc Denied July 3, 1956.

Appellee's Petition for Rehearing Denied July 9, 1956.

---

**554**

Mr. D. M. Patrick, Washington, D. C., with whom Messrs. Lester Cohen and Parker D. Hancock, Washington, D. C., were on the brief, for appellant W. S. Butterfield Theatres, Inc.

Mr. William J. Dempsey, Washington, D. C., with whom Messrs. William C. Koplovitz and Harry J. Ockershausen, Washington, D. C., were on the brief, for appellant Trebit Corp.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, Daniel R. Ohlbaum and Henry Geller, Counsel, Federal Communications Commission, were on the brief, for appellee.

Messrs. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, Edward W. Hautanen, Counsel, Federal Communications Commission, and Warren D. Quenstedt, Counsel, Federal Communications Commission, at the time record was filed, also entered appearances for appellee.

Mr. R. Russell Eagan, Washington, D. C., with whom Messrs. Reed T. Rollo and Herbert J. Miller, Jr., Washington, D. C., were on the brief, for intervenor.

Before BAZELON, DANAHER and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

These appeals arise from a three-way contest for a permit to construct a televi-sion station at Flint, Michigan. On May 12, 1954, the Federal Communications Commission granted the application of WJR, the Goodwill Station, Inc., the intervenor, and denied those of W. S. Butterfield Theatres, Inc., and Trebit Corporation, the appellants.[1] On December 6, 1954, the Commission denied appellants' petitions for rehearing and affirmed the grant to WJR. Ten days later WJR filed a petition for modification of its construction permit to embody a changed proposal.. On the basis of this proposal, appellants jointly petitioned for reopening of the record and rehearing. In Nos. 12527 and 12528, Trebit and Butterfield appeal from the Commission's grant of the construction permit to WJR. In Nos. 12752 and 12753, they appeal from the Commission's refusal to rehear them on WJR's modification application. In Nos. 12666 and 12667, they appeal from the failure to reopen the record on account of the changed proposal. The question in the latter two appeals is whether the Commission, in refusing to reopen the record, abused its discretion. Since we answer that. question .in the affirmative and remand the case to the Commission to reopen the record and conduct further hearings, we do not reach the questions in Nos. 12527, 12528, 12752 and 12753.

We held in Enterprise Co. v. Federal Communications Comm.[2] that the Commission had erred in not reopening the record to receive evidence as to events transpiring before its determination of the petition for rehearing, but about three months after expiration of the statutory period for filing such petitions. The Commission argues that Enterprise does not control the case now before us because (1) this reopening was not sought until after denial of the.petitions for rehearing, and (2) these new events would not significantly affect the Commission's decision.

■ Our decision in Enterprise was not limited to events occurring before de-

1. The parties will hereinafter be referred to as "WJR," "Butterfield" and "Trebit."

2. 97 U.S.App.D.C. 374, 231 F.2d 708, certiorari denied 76 U.S. 711.

cision of petitions for rehearing under § 405 of the Communications Act.[3] We said that we were laying aside the question whether there was a *right* to reopening of the record to include events occurring after filing of petitions for rehearing. We confined ourselves to holding that the Commission had power to reopen and that, in the circumstances of that case, it was an abuse of discretion not to exercise that power.[4] We pointed out that the Commission's power to reopen the record was co-extensive with its jurisdiction over the order it had made and that such jurisdiction existed until the time to appeal had expired.[5] In the instant case, as in Enterprise, "the events in question, though they occurred subsequent to the * * * order [granting the construction permit] and the petition for reconsideration * * * were dis-

closed at a time when the decision was still open for reconsideration. In these circumstances nothing in the language of sections 310(b) and 405 deprived the Commission of power to receive the new evidence and to reconsider or redecide the case on a comparative basis." [6]

■ Delay in seeking reopening of the record is a factor to be weighed in the exercise of the Commission's discretion. Here, however, it was excusable. The only reason the appellants' effort to reopen was not made earlier in the proceedings was that the new events which occasioned it were kept secret by WJR for several months.[7] Such a circumstance would have called for reopening the record even under the dissenting opinion in Enterprise. That opinion pointed out that "there was no concealment", because the successful applicant

---

3.  47 U.S.C.A. § 405.

4.  Opinion (majority), 97 U.S.App.D.C. at pages 378–379, 231 F.2d at pages 712–713.

5.  Albertson v. Federal Communications Comm., 1950, 87 U.S.App.D.C. 39, 41–42, 182 F.2d 397, 399–400. As to events occurring during pendency of appeal, see Fleming v. Federal Communications Comm., 1955, 96 U.S.App.D.C. 223, 226, 225 F.2d 523, 526.

6.  Enterprise Co. v. Federal Communications Comm., Opinion (majority), 97 U.S. App.D.C. at page 378, 231 F.2d at page 712.

7.  The reason which WJR gave for holding off the announcement of the modifications it had decided upon months earlier was that the new proposal might be construed as an attempt to improve its transmitter site at a time when the Commission was considering Trebit's claim of superiority over the original WJR transmitter site. The Commission, in accepting that explanation, assumed that the new WJR transmitter proposal really was an improvement over the old. In denying the petition to reopen, the Commission stated that "the move places WJR in a geographic position similar to the one posed by Trebit who has argued vigorously that this location entitled it to a substantial preference"; and, further, that the appellants do not "allege that on a comparative basis WJR will be in any worse position than it was under its original

proposal." But the Commission misreads the record. The appellants, in their petition to reopen, point out that in the new proposal, as compared to the old, the transmitter site is 3.4 miles farther from the center of Flint, the antenna is 450 feet lower, and the adverse shadow effect is twice as great; and they argue that the new transmitter proposal is therefore clearly less desirable than the old.

Another defect in this "reason" for WJR's withholding of the truth until after denial of the petition for rehearing is the fact that it refers to only part of the changed proposal. For example, it does not explain why WJR withheld for at least six months the fact that it had abandoned its plan of building a new two-story television studio building and had already leased an existing one-story building, partially installed its equipment in that building and given it a nucleus staff.

In view of the foregoing, we do not share the Commission's view that "it is hard to conceive of a more forthright or open approach" than WJR's. We do not, however, express any opinion as to whether under Federal Communications Comm. v. WOKO, Inc., 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204, WJR's late revelation of its changed situation reflects upon its character and fitness as a licensee. That is one of the questions to be dealt with by the Commission, upon a consideration of all of the evidence, in the reopened hearing we order herein.

had disclosed the option agreement a few days before the argument of the petition for rehearing. Our dissenting brother added, however, that "had it withheld the information until after the [denial of the petition for rehearing] notwithstanding the execution of the agreement [earlier], a very different situation might well be said to have arisen."[8] That is this case.

The Commission urges upon us, as it did also in Enterprise, "that there must be an end to administrative proceedings" so that the community may sooner have television.[9] On that account, it is argued that even if Enterprise requires consideration of the new events, there is no requirement of additional hearing, because the Commission has already examined the new facts and determined that they would not affect its decision. Strangely, however, the posture of this case is such that to reopen the record and readmit the appellants to status as contestants at a comparative hearing cannot postpone, but may actually expedite the advent of television to Flint. Though it has refused to reconsider its grant to WJR at the instance of the appellants, the Commission has allowed the protests of several existing licensees against the modification of the construction permit, and has set that matter down for hearing under § 309(c), under a designation of issues broad enough to encompass more or less the proof that these appellants would have brought to bear. Thus, to have readmitted the appellants to the contest would have introduced no additional issues to prolong the case. And if the hearing ended with affirmance of WJR's grant, neither the public, nor any of the parties would have been injured in any way by appellants' presence. If, on the other hand, WJR were found disqualified, the Commission would have two other applicants to choose from. But, if WJR should be found disqualified in the § 309(c) hearing, without the appellants as parties, the entire proceeding which began about four years ago would be at an end and Flint would have no television station until new applications were filed and processed and a new comparative proceeding conducted.

Moreover, appellants should be readmitted to the contest, even if that would serve to prolong it. The new evidence here goes to the foundation of the Commission's decision,[10] so that refusal to reopen the record deprives appellants of their rights as competing applicants and "the proceedings lose their comparative character."[11] We said in Enterprise: "The Commission must have latitude in bringing finality to its choice between applicants but the circumstances to which we have referred impel us to conclude that in the public interest the Commission, in the exercise of a sound discretion, should have reopened the record for reception of evidence of the new developments and to complete comparative consideration in light of those developments."[12] That statement is no less applicable here. The new circumstances here were thus characterized by two of the Commissioners concurring in the order allowing the protests of several existing licensees against WJR's modification proposal: "The construction per-

8. Opinion (dissent), 97 U.S.App.D.C. at page 381, 231 F.2d at page 715.

9. Id. (majority), 97 U.S.App.D.C. at page 377, 231 F.2d at page 711.

10. The Commission cites the language of Judge Edgerton, concurring in Colorado Radio Corp. v. Federal Communications Comm., 1941, 73 App.D.C. 225, 229, 118 F.2d 24, 28, that the Commission "cannot be required to put aside its other duties and hold a rehearing whenever a new fact arises which might conceivably lead to a new conclusion." Whether it is lawful to dispense with hearing when the effect of the new facts upon the decision is only conceivable is a question not before us. In this case, the effect of the new facts upon the Commission's decision is or should be palpably significant and proximate. That a hearing should be granted in such circumstances is a minimal proposition.

11. Enterprise Co. v. Federal Communications Comm. Opinion (majority), 97 U.S. App.D.C. at page 378, 231 F.2d at page 712.

12. Id. (majority), 97 U.S.App.D.C. at page 379, 231 F.2d at page 713.

mit granted applicant after a hearing authorized it to construct its station at a site 23 miles southeast of Flint. It now proposes to build its station 20.5 miles northwest of the city limits of Flint. In addition, it has changed its proposed operation in a number of material respects. To all intents and purposes, we have before us a proposal raising new and serious questions."[13]

The significant changes in the WJR proposal, so far as now material, related to transmitter site, programming and studio building.

Section 3.685(a) of the Commission's rules requires that transmitters be so located as to provide a specified minimum field intensity over the principal community to be served. The Commission found that all three applicants satisfied that requirement. Rule 3.685(b) equates the best service with a transmitting antenna "located at the most central point at the highest elevation available."[14] Originally, WJR had proposed a transmitter farther from Flint than Trebit's, but on higher ground. Trebit sought a preference under Rule 3.685(b) because its site was closer to Flint, but the Commission denied the claim of preference, pointing out that Flint was so situated that there was no high ground nearby and that the applicants "have had to compromise in selecting their sites." Since quality of service is dependent, under the rule, upon both height and proximity, we can understand the Commission's unwillingness to choose between a near-low transmitter and a far-high transmitter.

Under its modified proposal, WJR is moving its transmitter site to the low-ground side of Flint. The result is that its transmitter will be not only farther from Flint than Trebit's, but also lower than Trebit's, so that Trebit would provide the better service by both standards of Rule 3.685(b).[15] Trebit's site is about 16 miles closer to Flint than the new WJR site and its tower would be about 200 feet higher than that now proposed by WJR.

We agree that administrative expertise is to be respected, especially in so technical a field as this, and we find in Rule 3.685(b) the Commission's expression of its expertise. Regularity of procedure would dictate that we give acceptance to the rule, yet not be so blind as to exclude such exceptions as can be established by proof in individual cases. The Commission's view that ad hoc exceptions to the rules are to be accepted on faith, while he who relies on the rule has the burden in each case of re-establishing it by independent proof, is error.

The second factor necessitating a rehearing is WJR's modification of its program schedule. It proposed a different network affiliation with a great increase in network programming. To make room for the additional network programs, WJR cut its film programming by

---

13. Although the burden of attacking a grant is normally upon the protestant under § 309(c), these two Commissioners felt that WJR had so significantly changed its proposal that the Commission should have exercised its discretion to place the burden upon WJR.

14. The section provides: "Location of the antenna at a point of high elevation is necessary to reduce to a minimum the shadow effect on propagation due to hills and buildings which may reduce materially the intensity of the stations' signals. In general, the transmitting antenna of a station should be located at the most central point at the highest elevation available. To provide the best degree of service to an area, it is usually preferable to use a high antenna rather than a low antenna with increased transmitter power. The location should be so chosen that line-of-sight can be obtained from the antenna over the principal community to be served * * *."

15. Trebit's attempt to prove, through the use of the official propagation charts promulgated by the Commission, the degree of superiority of its proposed service over that of WJR is rejected by the Commission upon the ground that the propagation charts are not sufficiently accurate to be probative. The Commission itself relies upon these charts for some purposes, so that it is rather difficult to understand why they should be unreliable for Trebit's purpose. Our decision, however, does not depend upon those charts.

one third and made various changes in its proposed local live programs, though the amount of local live programming was left substantially unaltered.

■ The Commission erroneously disregarded the sharp curtailment of film programming upon the ground that the film programs proposed by an applicant are not "the Commission's concern." Film programs make up a very substantial part of the program fare of television audiences. WJR's original proposal, for example, was to devote about 40 per cent of its broadcast time to films. Moreover, unlike network programs, over which perhaps the licensee has relatively little control, films are the free and independent selection of the licensee and are, therefore, as much a part of and a measure of his responsibility to the public and the Commission as are the live programs he produces. We pointed out in Johnston Broadcasting Co. v. Federal Communications Comm. that "in a comparative consideration, it is well recognized that comparative service to the listening public is the vital element, and programs are the essence of that service." [16] Some television stations devote only an insignificant portion of their time to live programming. If the network and film programs which occupy the bulk of their broadcast time are not "the Commission's concern," then the Commission has little left to consider in determining the relative merit of such stations.

■ Even if the Commission could properly concern itself only with local live programming, there would be no basis for its conclusion that WJR's changes in that respect are "too minor" to matter.[17] It may be that these changes would indeed turn out to be insignificantly minor, as the Commission concluded. But, as we held in Plains Radio Broadcasting Co. v. Federal Communications Comm.,[18] general conclusions about the character of a program proposal are inadequate in a comparative proceeding. The Commission must make findings as to the program proposal "and it must receive evidence upon which to base those findings."

On the question of programming, the Commission had before it only the proposed program schedule. The most that could be found from that was that WJR had made no significant change in the number and names of its live programs. But there was no evidence from which the Commission could find that there was no substantial change in the format, character or substance of the programs. Indeed, whatever evidence can be gleaned from a comparison of the two program schedules suggests that there may have been such changes. But only hearings can produce a definitive answer.[19]

16. 1949, 85 U.S.App.D.C. 40, 48, 175 F. 2d 351, 359.

17. The Commission said, in its memorandum and order denying the appellants' petition to reopen: "It is apparent from the foregoing, we think, that the changes which WJR proposes in those programs to which we attached so much importance, those of local live origination, are too minor to suggest that they would have, had they been in effect during the hearing, required any different finding or conclusion concerning the point of preference awarded to WJR."

18. 1949, 85 U.S.App.D.C. 48, 51–52, 175 F.2d 359, 362–63.

19. The Commission concluded, for example, that in WJR's new proposal, the amounts of educational and discussion
programs were changed by only .03 per cent each and talk programs by only .08 per cent. But the Commission did not determine how this statistical constancy was achieved and whether it is realistic. Only the hearing process will disclose whether WJR, in changing the type designations of programs without changing their formats in any way, has created only an illusion of constancy. We note that in the original proposal the three programs "Your Government—Local," "Your Government—State," and "Your Government—Federal," were all classified as "talk." In the new proposal, the first two are re-classified to "discussion" while the third remains "talk." The format of all three is left unchanged. A hearing might explain, also, how a program can be cut from 30 minutes to

The third change in WJR's proposal requiring rehearing is that relating to studio facilities. In making the original grant, the Commission found that WJR was proposing "to expend an estimated $776,000 in the construction of a new, two-story main studio building" and extended it a preference for "the manifest superiority demonstrated by WJR in its over-all technical plant * * *." On rehearing the Commission reaffirmed the preference given WJR for "its more elaborate studio facilities." After it received the grant WJR abandoned its plan to construct this $776,000 building. Instead, it leased and took an option to purchase for $125,000 the studio building of a defunct UHF television station. It would seem, merely from the difference in these figures, that WJR should not continue to enjoy a preference as to studio facilities unless, upon a rehearing, it could prove its less elaborate building as superior over appellants' proposed studios as the $776,000 building had been found to be.[20]

But the Commission concluded "that the studio proposals of WJR have not so changed as to materially affect the conclusions we made with respect to the superiority of these facilities when compared with those of Trebit and Butterfield." It based its conclusion upon an observation that the $125,000 building would have studios "somewhat, but not substantially, smaller than those originally proposed."[21] The Commission added: "Moreover, WJR states that the studios will be expanded if needed to adequately present its programs." It may be that a hearing would substantiate the Commission's conclusion that the two studio buildings are not significantly different. Until then, however, that conclusion is baseless. It certainly cannot be supported by WJR's naked promise to repair whatever deficiencies may appear. These comparative contests must turn upon concrete proposals tested through the hearing process, not upon facile and untested afterthoughts. We said in the Plains Radio case that if the Commission wishes to tell us that a 5-kilowatt standard broadcast station is not significantly different from a 1-kilowatt station, it should make findings to that effect "and it must receive evidence upon which to base those findings."[22] Similarly, only findings based upon evidence will support a conclusion that a $125,000 studio building does not significantly differ from a $776,000 studio building.

Appellants, ancillary to their six appeals, have petitioned us for an order directing the Commission to re-

---

15 minutes, changed from film to live and reclassified from "entertainment" to "talk," all with the same format. One of the programs in the new proposal would seem, unless explained at a hearing, to be an impossibility. This program, "Symphony at Work," is described in the Commission's decision as a Sunday afternoon film presentation of the Wednesday evening symphony rehearsals and WJR originally classified it as film. In the new proposal, however, the program becomes "live," though still scheduled for Sunday, not Wednesday. It may be that WJR is classifying the program as "live" because it would be locally filmed by the licensee. (See F.C.C. Form 301, Sec. IV, page 4.) But this explanation would leave unexplained why the program was classified as "film" in the original proposal. Such matters are peculiarly designed for exploration at hearings.

20. Whether the proposed new studios are either adequate or as good as those proposed by the appellants is not the question. The Commission misses the point completely when it states, in refusing to reopen the record, that "petitioners do not contend that WJR's proposed studios will be inferior to theirs." The question, as already noted, is whether the newly proposed WJR facilities will be superior to appellants'; for such superiority was one of the grounds of the grant to WJR.

21. The fact is that the original studios would have provided about one fourth more floor space than those newly proposed and that two of the original studios were two-story rooms, providing 27-foot high ceilings, while the newly proposed building is a one-story structure.

22. 85 U.S.App.D.C. at page 50, 175 F.2d at page 361.

scind its order of April 14, 1955, allowing modification of WJR's construction permit. That petition is denied. Appellants' rights are completely protected by our disposition of the two appeals relating to reopening of the record. The Commission will conduct further hearings on the question of differences between WJR's original and modified proposals and will reconsider its grant to WJR in the light of the differences thus disclosed.

Reversed and remanded for further proceedings consistent with this opinion.

DANAHER, Circuit Judge (dissenting).

Important and critical criteria clearly predicated the Commission's grant to WJR. As between the successful intervenor and Trebit the Commission said: "In our opinion, the most significant difference between WJR and Trebit, and what, in our mind, is the *determinative* factor in the comparison of these two applicants, is the fact that a grant to WJR *would better serve the Commission's well-established policy of diversification of the media of mass communications and, at the same time, would avoid the concentration of control of such media within a relatively small area that would result from a grant of the Trebit application.*" (Emphasis supplied.) J.A. 482. As between WJR and Butterfield the Commission said: "However, in our opinion, the *determinative* factor in the comparison of these two applicants relates to the preparation of their program proposals to serve the needs of the Flint community. *In this connection WJR warrants a significant preference.*" (Emphasis supplied.) J.A. 483. Petitions for rehearing by the disappointed applicants were denied.

Full comparative hearings had been accorded the respective parties. The determinative factors as indicated upon which the Commission's award had rested were amply supported by the record. Without more, the Commission's award would and should have been affirmed. The "more" upon which the majority relies stems from the allowance of the petition of the successful applicant to modify its construction permit in what the Commission decided were certain minor particulars. The effect of the modification requested was for the Commission to determine. There was no basis for new comparative hearings. Under the scheme of the Act, only protest proceedings remained. For purposes of illustration, suppose the Commission itself under § 316(a) had undertaken to modify a construction permit which had already been awarded. Is it to be supposed that the petitioners here, former applicants, would have been entitled to further comparative hearings?

I respectfully suggest, once again, that we "are not charged with general guardianship against all potential mischief in the complicated tasks of government. * * * Interference by the courts is not conducive to the development of habits of responsibility in administrative agencies."[1]

This case is not controlled by Enterprise[2] which is completely distinguishable in my view.[3]

1. Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 146, 60 S.Ct. 437, 443, 84 L.Ed. 656. The parties here had had their "full hearing," and we should, indeed, be slow to interfere with the Commission's conclusions so completely reconcilable with the statutory directions.

United States v. Storer Broadcasting Co., 76 S.Ct. 763.

2. Enterprise Co. v. Federal Communications Comm., 1955, 97 U.S.App.D.C. 374, 231 F.2d 708.

3. Ibid., see dissent.