239 F.2d 19
 McCLATCHY BROADCASTING COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Sacramento Telecasters, Inc., Intervenor.
McCLATCHY BROADCASTING COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Sacramento Telecasters, Inc., Intervenor.
 No. 12470.
 No. 12637.
 
 On Rehearing.
 United States Court of Appeals District of Columbia Circuit.
 Appeal from Order of the Federal Communications Commission
 Argued May 23, 1956.
 Decided October 18, 1956.
 Writ of Certiorari Denied March 25, 1957.
 See 77 S.Ct. 664.
 COPYRIGHT MATERIAL OMITTED Mr. Thomas H. Wall, Washington, D. C., with whom Messrs. Clair L. Stout, Jerome H. Heckman and Thomas J. Dougherty, Washington, D. C., were on the brief, for appellant.
 Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, for appellee.
 Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, and Stanley S. Neustadt, Counsel, Federal Communications Commission, were on the brief for appellee in case No. 12,470.
 Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, and Henry Geller, Counsel, Federal Communications Commission, were on the brief for appellee in case No. 12,637.
 Mr. J. Roger Wollenberg, Washington, D. C., with whom Mr. Dwight D. Doty, Washington, D. C., was on the brief, for intervenor.
 Messrs. Elisha Hanson, Arthur B. Hanson, Garland Clarke and Paul L. O'Brien, Washington, D. C., filed a brief on behalf of American Newspaper Publishers Ass'n as amicus curiae, urging reversal in case No. 12,470.
 Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.
 WILBUR K. MILLER, Circuit Judge.
 
 
 1
 During a comparative hearing on mutually exclusive applications for a television construction permit filed by McClatchy Broadcasting Company and Sacramento Telecasters, Inc., the presiding examiner permitted Telecasters, over McClatchy's objection, to amend its application. The amendment provided for a higher antenna of a different type, making Telecasters' proposed coverage practically equal to that proposed by McClatchy. As a result of the amendment the applicants stipulated there would be no substantial difference in coverage between the two proposals from an engineering standpoint, thus removing the coverage issue from the case.[1]
 
 
 2
 After the hearing, the examiner's initial decision found McClatchy would better serve the public interest, but the Commission disagreed. It recognized McClatchy's outstanding record of public service in the newspaper and radio fields, but considered diversification of control of facilities for the dissemination of fact and opinion to be determinative. On the basis of that holding the Commission issued October 4, 1954, a television construction permit to Telecasters, a newcomer in the communications field without radio or newspaper connections.
 
 
 3
 McClatchy appealed to this court November 1, 1954. We affirmed. McClatchy v. Federal Communications Commission, No. 12,470, decided January 27, 1956. 99 U.S.App.D.C. 195, 199, 239 F. 2d 15, 19. The matter is again before us on rehearing. It was a close case, since the evidence showed and the Commission found McClatchy superior in important aspects of the comparison. But, as we said in the opinion, "Although the examiner's choice of McClatchy as superior in all respects except diversification of control is strongly supported by the proof, we cannot find that the Commission's decision was arbitrary, capricious or unsupported by substantial evidence." We adhere to that statement and accordingly on the record presented to us in case No. 12,470 again affirm the order on appeal therein.
 
 
 4
 As that record does not reflect developments in the proceeding before the Commission which took place after the grant to Telecasters was made, those subsequent events were not before us when we considered McClatchy's appeal from the order of October 4, 1954, and upheld the grant. The developments were these: Telecasters filed with the Commission November 26, 1954, an application for modification of the construction permit which had been issued less than 60 days before. It sought to change its transmitter site from Pine Hill to Logtown, California, and to decrease the height of the antenna. These changes would reduce the coverage of Telecasters' station[2] below that which it had proposed by amendment during the hearing, which was approximately equal to that proposed by McClatchy. Without a hearing on the application for modification, the Commission granted it December 9, 1954, and publicly announced its action December 14.
 
 
 5
 January 13, 1955, McClatchy petitioned the Commission, under § 405 of the Communications Act as amended, 47 U.S.C.A. § 405, to stay the effectiveness of the modification, and to designate for hearing Telecasters' application therefor. McClatchy's petition summarized its points as follows:
 
 
 6
 "1. The modification of Telecasters' construction permit was granted on the basis of false representations made to the Commission;
 
 
 7
 "2. The grant of the above-entitled modification, if allowed to go unchallenged, results in a fraud being practiced on the Commission and McClatchy Broadcasting Company in view of the representations made by Telecasters in the comparative hearing between it and McClatchy for the original construction permit;
 
 
 8
 "3. The grant of the above-entitled modification if allowed to go unchallenged will result in a fraud being practiced upon the people in the area to be served by the station proposed by Telecasters because of the false representations made to these people with regard to the service that will be rendered; and
 
 
 9
 "4. The grant of the above-entitled modification if allowed to go unchallenged will adversely affect the interests of McClatchy as this modification is directly related to the grant of the original construction permit."
 
 
 10
 The petition, which is quite lengthy and detailed, supported the four points with specific allegations and equally detailed opposition was filed by Telecasters, to which McClatchy replied.
 
 
 11
 In the petition, McClatchy referred to circumstances which were not revealed by the respective applications and which were not known to the parties during the hearing. The allegations, therefore, fall within the reservation in the mid-hearing stipulation (see the quotation therefrom in footnote 1, supra, and particularly the italicized words) subject to which McClatchy had joined in waiving the right of cross-examination on the coverage issue and the right to present other evidence thereon. It seems that McClatchy's allegations were sufficient to destroy the effect of the waiver, and thus to entitle it to be heard on the engineering issue which was allegedly revivified by Telecasters' application for modification.
 
 
 12
 The Commission did not afford McClatchy a hearing. In an opinion adopted March 16, 1955, and released two days later, it held McClatchy had no standing under § 405 of the Act either as licensee of a standard broadcast station at Sacramento or as the unsuccessful applicant for a television broadcast station in Sacramento. With respect to the latter, the Commission said:
 
 
 13
 "* * * The proceeding involving McClatchy's application for a construction permit has been concluded. The time for seeking reconsideration has expired.* McClatchy is no longer an applicant for Channel 10. Standing cannot be based upon a former status. It should be noted that even if the instant modification of Telecasters' permit were not to be granted, this would not serve to reinstate McClatchy as an applicant for Channel 10 because Telecasters' original construction permit would still be outstanding. * * *"
 
 
 14
 * "An appeal from the Commission's decision granting the construction permit to Telecasters and denying McClatchy's application is pending in the U. S. Court of Appeals for the District of Columbia Circuit * * *. This fact does not alter McClatchy's status. The Commission's decision has not been stayed. In the event the Commission's decision is reversed, the basic construction permit will be vacated, and both the McClatchy and Telecasters applications reconsidered. * * *"
 
 
 15
 Thus the Commission attributed such finality to the grant to Telecasters made October 4, 1954, that it considered McClatchy was thereafter not a party to the proceeding in which the grant was made, and so had no legitimate interest in and could not complain of the modification of the grant or any subsequent event.
 
 
 16
 The agency decision awarding a construction permit to Telecasters was not stayed, as the Commission points out, and consequently it was effective pending appeal and Telecasters could have commenced construction thereunder by taking a calculated risk as to the result of the appeal. During the pendency of the appeal. McClatchy had no standing to protest against anything done under the unstayed order of October 4, 1954, or to object to any further order which merely implemented or explained the appealed order without changing its essential nature.
 
 
 17
 But if, while the appeal was pending here, the Commission desired, without a hearing, to modify the granted construction permit so drastically as to make it a different permit from that which we were considering, it should have notified the court it was withdrawing the grant under appeal, whereupon the appeal would have been dismissed as moot. In that event, undoubtedly McClatchy would be deemed to have standing to protest the issuance of a modified permit and demand a hearing. If, on the other hand, the Commission desired merely to consider whether to approve a proposed modification which would, in effect, substitute a new permit for that on appeal, it should have moved that the case be remanded for that purpose. In that event also McClatchy would have been entitled to protest and be heard. Compare W. S. Butterfield Theatres, Inc., v. Federal Communications Commission, 99 U.S.App.D.C. 71, 237 F.2d 552, decided by this court May 24, 1956.
 
 
 18
 It would obviously be unseemly for the Commission, without the knowledge or permission of the court, to substitute another grant for that which is being judicially examined on appeal, leaving the court with the time-consuming and difficult task of reaching a decision as to the validity of a construction permit which has long since ceased to exist. We held in the Albertson and Enterprise cases[3] that the Commission has jurisdiction over its orders until the period for appeal has expired. It should not render an appeal moot without the court's knowledge or consent by in effect substituting a new and different order for that which is under challenge.
 
 
 19
 We think that modifying some of the basic characteristics of a construction permit is tantamount to the issuance of a new and different permit. To do this without affording the parties to the comparative hearing a chance to protest and be heard amounts to granting a permit for construction which had not been proposed before or during the hearing and which therefore had not been compared with the proposals of other applicants.
 
 
 20
 In these circumstances, it seems clear that the Commission erred in saying McClatchy had no standing to protest. Particularly is this true in view of the charge that Telecasters had never intended to honor its mid-hearing proposal to match the coverage proposed by McClatchy, but fraudulently intended merely to gain a competitive advantage in the hearing. If the reduction in coverage had been proposed during the hearing, obviously McClatchy might have had in its superior coverage proposal an additional preference which might have turned the balance in its favor.
 
 
 21
 All that has been said depends, of course, upon the assumption that the modification was such a drastic change in the permit as to make it a new grant which, when considered in connection with McClatchy's charge of fraud, might not be in the public interest. Whether so or not was a mixed question of fact and policy which should have been considered in a hearing. Although it denied McClatchy's right to protest, the Commission regarded its charges as of such gravity as to require consideration. With respect to this, the Commission said in its opinion:
 
 
 22
 "Despite the fact that McClatchy has no standing to request reconsideration or the other relief asked for, we believe that consideration by the Commission on its own motion of some of the allegations made in this case is nevertheless warranted because of the nature of the allegations made against Telecasters. Charges of fraud committed by a permittee in his dealings with the Commission go to his basic character qualifications, and as such warrant our close scrutiny. As the concurring Commissioners stated in the Polan case, supra [Edward G. Polan et al., 8 Pike & Fischer, RR 398]:
 
 
 23
 "`* * * In general, however, we think it important to point out that any substantial evidence coming before us and indicating a misrepresentation or lack of good faith by the applicant in connection with data submitted to us would require our most careful attention. In this or any other case should such evidence come to our attention — possibly for example in connection with an application for modification of a construction permit to specify a different site — we would, of course, be required to review it most carefully.' We will, therefore, consider the allegations of McClatchy relating to false representations made by Telecasters to the Commission and to the people of the Sacramento area."
 
 
 24
 We agree with the quoted statement, except we think McClatchy had standing, as we have already indicated. The question is, then, whether the Commission had authority to resolve the issues so raised by a summary decision on the pleadings or whether it should have conducted an evidentiary hearing. Could the Commission properly proceed, as it did, to dispose of the matter as though on a demurrer which searched all the pleadings or, perhaps more accurately, as though on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure?â€¡
 
 
 25
 We think not. There were admittedly serious issues of material fact. We said in Federal Broadcasting System v. Federal Communications Commission, 1955, 96 U.S.App.D.C. 260, 263, 225 F.2d 560, 563:
 
 
 26
 "* * * What is required [of a protest under § 309(c)] is merely an articulated statement of some fact or situation which would tend to show, if established at a hearing, that the grant of the license contravened public interest, convenience and necessity, or that the licensee was technically or financially unqualified, contrary to the Commission's initial finding." [Emphasis supplied.]
 
 
 27
 In a second Federal Broadcasting System opinion,[4] we said, "Certainly in the absence of some established procedural system to the contrary, we think it improper to rely solely on an opposition pleading as a basis for a finding of fact"; and later added:
 
 
 28
 "* * * Only if it is clear from the face of the protest, taking all the protestant's allegations as true, that there is no real merit in protestant's position or substantial possibility that a hearing will reveal merit, should the protest be rejected without a hearing."
 
 
 29
 In closing the opinion, we said the views therein expressed were based on our interpretation of the statutes as they stood at the time of the Commission's challenged action. We did not deem it necessary or appropriate to decide whether the amendment of § 309(c), which gave the Commission power to consider a protest as though on demurrer,[5] "is to be applied retroactively, or, if it is to be so applied, in what manner (if at all) it affects the present case." Here also the Commission's challenged action was taken long before the 1956 amendment of § 309 (c).
 
 
 30
 We noted in Clarksburg Publishing Co. v. Federal Communications Commission, 1955, 96 U.S.App.D.C. 211, 215, 225 F.2d 511, 515, that
 
 
 31
 "Section 309(c) [as it stood before the 1956 amendment] also provides that if, as here, the Commission finds that the protest meets the `party in interest' and `particularity' requirements, `the application involved shall be set for hearing upon the issues set forth in said protest, together with such further specific issues, if any, as may be prescribed by the Commission.'" [Emphasis in the quoted opinion.]
 
 
 32
 Our conclusion is the Commission erred in holding McClatchy lacked standing to challenge the modification proposal, and in summarily dismissing the protest which it nevertheless considered. The Commission should conduct an evidentiary hearing on the protest and then decide whether to set aside either the modified grant to Telecasters, or the modification and the original grant as well; and in either event to consider what action thereafter would be appropriate.
 
 
 33
 Order in case No. 12,470 affirmed.
 
 
 34
 Order in case No. 12,637 reversed and case remanded for proceedings in accordance herewith.
 
 
 
 Notes:
 
 
 [1]
 In the following paragraph quoted from the stipulation, we italicize a reservation which may be pertinent here:
 "In the absence of circumstances not now known to the parties herein or disclosed by their respective applications, it is further stipulated and agreed that all of the counsel for the respective applicants and Commission counsel hereby waive cross-examination on the matters covered by this stipulation, and in addition, waive the right to present other evidence thereon."
 
 
 [2]
 The Commission says in its brief: "This modification would result in somewhat reduced coverage for Telecasters' station."
 
 
 [3]
 Albertson v. Federal Communications Commission, 1950, 87 U.S.App.D.C. 39, 41-42, 182 F.2d 397, 399-401; Enterprise Co. v. Federal Communications Commission, 1955, 97 U.S.App.D.C. 374, 378, 231 F.2d 708, 712
 â€¡ 28 U.S.C.A.
 
 
 [4]
 Federal Broadcasting System v. Federal Communications Commission, 1956, 97 U.S.App.D.C. 293, 297, 231 F.2d 246, 250
 
 
 [5]
 Public Law No. 391, 84th Cong., 2d Sess., approved January 20, 1956, 47 U.S. C.A. § 309(c)